## SIMON KEMP ET AL. *v.* TOWN OF HAZLEHURST.

1. MUNICIPAL BONDS.  *Code* 1892, §§ 3006, 3007, 3008, 3014, 3015, 3016, 3017.

    The bonds of a municipality issued under code 1892, §§ 3014, 3015, 3016, 3017, are not invalid:  Because,

    (*a*) The resolutions, other than an ordinance adjudging that the election had been properly held resulting in favor of the issuance, of the municipal authorities, providing for their issuance, do not conform to code 1892, § 3006, requiring the style of ordinances to be, "Be it ordained," etc; nor because,

    (*b*) The resolutions, other than the one declaring an intention to issue the bonds, were not published as ordinances are required to be published by code 1892, § 3006, a notice of the election having been duly given by the election commissioners; nor because,

    (*c*) The resolutions, other than the ordinance adjudging that the election had been properly held, resulting in favor of the issuance, are not shown of record to have been read and considered (code 1892, § 3007) by sections; nor because,

    (*d*) The resolutions, other than the ordinance adjudging that the election had been held, and the one ordering the issuance of the bonds, are not shown of record to have had the vote on their final passage taken by yeas and nays; nor because,

    (*e*) The resolutions, other than the ordinance adjudging the election to have been properly held, do not conform to code 1892, § 3008, requiring ordinances to contain but one subject-matter, and that to be clearly expressed in its title; nor because,

    (*f*) An official ballot was not provided or voted at the election authorizing the issuance of the bonds; nor because,

    (*g*) The ballots voted at the election did not indicate the amount of bonds authorized, or show by whom the bonds were to be issued; nor because,

    (*h*) The election was held to submit to the voters the issuance of bonds for two purposes jointly, the erection of waterworks and an electric light plant; nor because,

    (*i*) There is no provision made in any of the proceedings (under code 1892, § 3015) that the bonds or any part thereof shall be payable after five years at the option of the municipality; nor because,

    (*j*) One hundred dollars, of a thirty-five thousand dollars issue, of the bonds are (under code 1892, § 3017) made to mature annually for nineteen years and all the balance to mature in twenty years.

FROM the chancery court of Copiah county.

HON. HENRY C. CONN, Chancellor.

Kemp and others, appellants, were complainants, and the town of Hazlehurst was defendant in the court below. The town was about to issue municipal bonds when the complainants, citizens and taxpayers of the municipality, sought to enjoin their issuance. They filed a bill in the chancery court seeking an injunction to prevent the sale of the bonds. A complete transcript of all of the proceedings of the municipal authorities of the town was made an exhibit to the bill—exhibit A—and the objections thereto were claimed to be apparent on the face of the record. The defendant, the town, demurred to the bill, the demurrer was sustained, and the suit dismissed, and thereupon the complainants appealed to the supreme court.

The record of the municipal authorities of the town, and the objections specified to it by complainants, follow:

### EXHIBIT "A," No. 1.

*Copy from the minutes taken from the August meeting of the mayor and board of aldermen in the year 1901.*

#### NOTICE OF BOND ISSUE.

Whereas, it is manifest to the board of mayor and aldermen of the town of Hazlehurst, Mississippi, that there is immediate necessity for the erection of waterworks and an electric light plant in and for the town of Hazlehurst;

Be it therefore resolved, That it is the purpose of the board of mayor and aldermen of the town of Hazlehurst to issue the bonds of the town of Hazlehurst to the amount of thirty-five thousand dollars, or so much thereof as may be necessary for the purpose of the erection of waterworks and an electric light plant for the town of Hazlehurst, Mississippi. The above notice is published in accordance with the provisions of §§ 3014, 3015, 3016, and 3017 of the annotated code of Mississippi, for the purpose of notifying the taxpayers of the town of Hazlehurst of the proposed action of the board and mayor of aldermen of

said town, so that if there be any opposition to the issuance of said bonds, it may be presented to the board of mayor and aldermen of the town of Hazlehurst, as provided by law, on or before the first Tuesday, the 3d day of September, 1901.

Ordered that the above notice be published in the *Hazlehurst Courier,* a weekly newspaper, published in the town of Hazlehurst, for three weeks next preceding the first Tuesday, the 3d day of September, 1901.

Minutes closed and signed by E. M. Cook, mayor, and J. M. Norman, clerk.

Minutes signed on Tuesday the 6th day of August, 1901.

#### PROOF OF PUBLICATION.

State of Mississippi, Copiah County:

Personally appeared before the undersigned, E. M. Cook, mayor and *ex officio* justice of the peace, in and for the town of Hazlehurst, in said county and state, Sam D. Harper, one of the publishers of the *Hazlehurst Courier,* a newspaper published at Hazlehurst, Mississippi, who on oath says: The notice, a copy of which is hereto attached [being the notice of bond issue, *supra,* p. 443], was printed three consecutive times in said paper, as follows, to wit, August 8, 1901, August 15, 1901, and August 22, 1901.

Signed, SAM D. HARPER, *Publisher.*

Sworn to and subscribed before me, this the 25th day of September, 1901.

E. M. COOK, *Mayor and ex officio J. P.*

#### EXHIBIT "A," No. 2.

##### COPY OF MINUTES.

Board met in regular session on Tuesday the 3d day of September, 1901, all five members present, and after attending regular business, adjourned until Wednesday the 4th day of September, at 5 o'clock, in a regular adjourned meeting, and at the adjourned meeting there were three members of the board and mayor present.

At the regular adjourned meeting, September 4, 1901, the following preambles and resolutions were adopted:

*Whereas,* It appears to the mayor and board of aldermen of the town of Hazlehurst, that due notice of their intention to issue the bonds of the said town, to the amount of $35,000, or so much thereof as may be necessary, not exceeding said sum, for the purpose of erecting electric lights and waterworks in said town, hath been given by publication in the *Hazlehurst Courier,* a weekly newspaper published in said town; it is therefore,

*Resolved first,* That an election is hereby ordered to be held on the 24th day of September, 1901, at which election shall be submitted to the qualified electors of the town of Hazlehurst the question of whether or not they will vote to authorize the mayor and board of aldermen to issue bonds of said town, in the sum of $35,000, or so much thereof as may be necessary for the purpose of erecting electric lights and waterworks in the town of Hazlehurst.

*Resolved second,* That due notice of the election be published in the *Hazlehurst Courier,* for two weeks from the passage of this resolution; the said *Hazlehurst Courier* being a weekly newspaper published in the said town.

*Resolved third,* That E. W. Burrage, A. T. Graves, and William Mayes, be, and they are hereby appointed, commissioners to hold the said election, and are hereby required to publish notice of the holding of same as required above.

*Resolved fourth,* That the commissioners herein appointed make due report of the election so held and returns thereof to the mayor and board of aldermen at the next regular meeting after the holding of said election.

. . . . . . . . . . . .

Further proceedings at the same meeting in relation to providing for the ballots, etc., as follows:

It is ordered by the mayor and board of aldermen, that the commissioners appointed to hold the election on the 24th day of

September, 1901, for the purpose of submitting to the vote of the qualified electors of the town of Hazlehurst the question of whether or not they will vote for the issuance of the bonds of the municipality for the sum of $35,000, or so much thereof as may be necessary, for the purpose of erecting electric lights and waterworks in said town, be, and they are hereby, empowered to have printed a sufficient number of ballots to be used in holding said election.

*Second,* It is ordered further that the ballots be printed as follows: That is to say, that there shall be printed on each ballot the following: "For the issuance of the bonds for the erection of electric lights and waterworks," and underneath this, on the same ticket, shall be printed, "Against the issuance of the bonds for the erection of electric lights and waterworks," and these shall be the ballots used in the election.

Minutes signed by              E. M. Cook, *Mayor.*

                         J. M. Norman, *Clerk.*

## EXHIBIT "A," No. 3.

### NOTICE OF ELECTION.

Whereas, The mayor and board of aldermen have ordered an election to be held on the 24th day of September, 1901, at the mayor's office, for the purpose of submitting to the qualified electors of the town of Hazlehurst the question of whether or not they will vote for the issuance of the bonds of said town in the sum of $35,000, or so much thereof as may be necessary, for the purpose of erecting electric lights and waterworks of said town, notice is hereby given to the qualified electors of said town that an election will be held at the mayor's office, in said town, on the 24th day of September, 1901, whereat the question of whether or not the town shall issue the bonds shall be decided.    Signed by

                    E. W. Burrage,

                    A. T. Graves,

                    William Mayes,

                    *Commissioners Election.*

PROOF OF PUBLICATION.

State of Mississippi, Copiah County:

Personally appeared before the undersigned, E. M Cook, mayor and *ex officio* justice of the peace, in and for the town of Hazlehurst, in said county and state, Sam D. Harper, one of the publishers of the *Hazlehurst Courier,* a newspaper published at Hazlehurst, Mississippi, who on oath says the notice, a copy of which is hereto attached [being the notice of election, *supra,* p. 447], was printed three consecutive times in said paper as follows, to wit, September 5, 1901, September 12, 1901, and September 19, 1901.

Signed, SAM D. HARPER, *Publisher.*

Sworn to and subscribed before me, on this 24th day of September, 1901.

E. M. COOK, *Mayor and ex officio J. P.*

EXHIBIT "A," No. 4.

MINUTES.   REPORT OF ELECTION.

On Tuesday the first day of October, 1901, the board met in regular session, there being present at the meeting E. M. Cook, mayor, and aldermen Ellis, Ainsworth, Norman, Dampeer, and Johnson. At said meeting the following report was submitted by the commissioners previously appointed by the mayor and board of aldermen to hold the election:

"To the honorable mayor and board of aldermen of the town of Hazlehurst, Mississippi:

"We, the undersigned commissioners of election, appointed by the honorable mayor and board of aldermen at its regular September meeting, 1901, to hold an election for the purpose of submitting to the qualified electors of the town of Hazlehurst, the question of whether or not they would vote for the issuance of $35,000 in bonds, for the purpose of erecting an electric light and waterworks plant in said town, respectfully report as follows, to wit:

*First,* That in pursuance to the previous order of this honorable body, your commissioners having notice published in the *Hazlehurst Courier,* a weekly newspaper published in the town of Hazlehurst, for three consecutive weeks, prior to the time of holding the election, apprising all qualified electors of the purpose of the mayor and board of aldermen to submit the above question to them, on the 24th day of September, 1901, which said notice was published for three consecutive weeks before the time set for the election, as will appear by the affidavit of the publisher of the *Hazlehurst Courier.*

*Second,* On examination of the registered voters of the town of Hazlehurst, we find that there are 178 qualified electors of the said town, and that there were 164 votes cast for and against the proposed issuance of the said bonds. That out of the number of the votes cast, there were cast in favor of the proposed bond issue the number of 153 votes, and that there was cast against the proposed bond issue the number of 11 votes, and that there were the number of 14 qualified electors who did not vote at all.

*Third,* That your said commissioners further report that out of the number of qualified electors of said town, as shown by the polls, out of the number voting, and those not voting, more than two-thirds of the qualified electors of the said town voted in favor of the bond issue, and your commissioners report that the bond issue was carried by 153 votes in favor of the bond issue, as against 11 votes cast against same, and 14 electors not voting, though qualified.

*Fourth,* Your commissioners herein appointed submit this, their report, together with all the votes cast for and against the poll books, tally lists, lists of voters, ballot box, and ballots for your recount and supervision.

E. W. BURRAGE,
A. T. GRAVES,
WILLIAM MAYES,
*Commissioners Election.*

## EXHIBIT "A," No. 5.

At the same October meeting the following resolutions, etc., were passed:

"An ordinance declaring the elections for the issuance of bonds for the purpose of erecting electric lights and waterworks in the town of Hazlehurst, carried in favor of the issue of bonds for that purpose.

"*Whereas,* The mayor and board of aldermen of the town of Hazlehurst, county of Copiah, and state of Mississippi, desired to erect, maintain, and purchase a waterworks and electric light plant, for the said town, and desired to issue bonds for this purpose; and whereas, it appeared from the assessment rolls of the town of Hazlehurst that the outstanding bonds of the said town, together with the proposed issue of the $35,000 for the purpose of erecting this plant as above specified, exceeds seven per centum of the assessed value of the taxable property of the municipality, but is less than ten per centum of said assessed value of the taxable property as aforesaid, as appears from the assessment roll of said municipality, now on file in the mayor's office in said town; therefore, the mayor and board of aldermen of the town of Hazlehurst, at a regular meeting of the board as provided by § 2989 of the annotated code of 1892, begun and held at the mayor's office of said town, on the first Tuesday the 6th day of August, A.D. 1901, passed the following resolutions, to wit:"

[Here follows Exhibit "A," No. 1, *ante,* p. 444.]

And, whereas, It appears to the mayor and board of aldermen that the above resolution was fully set out in the minutes of the proceedings of the mayor and aldermen, and that the same appears on page 55 of the minute book; and, whereas, it fully appears from the affidavit of Sam D. Harper, one of the publishers of the *Hazlehurst Courier,* which said affidavit is attached to the notice, and is of record in the mayor's office, and filed with the town clerk, together with the notice, which is

copied and annexed herewith, and made a part of this ordinance (and is hereby required to be copied by the town clerk, as a part hereof, in this ordinance); and it further appears that the notice was duly published in the *Hazlehurst Courier,* a weekly newspaper published in the town of Hazlehurst, for a period of three weeks next preceding the meeting of this board, begun and held at the mayor's office in said town on the first Tuesday the 3d day of September, A.D. 1901, as required by § 3016, code 1892.

And, whereas, The said mayor and board of aldermen of the said town of Hazlehurst, met again in regular session, as provided by § 2989, code 1892, and in pursuance to the notice previously given by publication as aforesaid, on the first Tuesday the 3d day of September, 1901, at the mayor's office, in the town of Hazlehurst, being their regular place of meeting, for the purpose of conducting their business and hearing any and all objections that might be urged by the taxpayers against the proposed bond issue, as specified in their notice.

The mayor and board of aldermen, after transacting other business of importance, and there being no objection urged by any taxpayer, and no petition against their proposed action, having been filed by anyone, adjourned their meeting over to meet again at 5 P.M. on Wednesday the 4th day of September, 1901.

And, whereas, The mayor and board of aldermen met again at 5 P.M. on the 4th day of September, 1901, at the adjourned regular meeting, in pursuance to the adjournment to meet at that time, and the following resolutions were adopted at said adjourned regular meeting:

[Here follows the first part of Exhibit "A," No. 2, *ante,* p. 445 *et seq.*]

And, whereas, It further appears at the adjourned regular meeting on the 4th day of September, 1901, that the following order was also passed by the mayor and board of aldermen, that is as follows, to wit:

[Here follows the balance of Exhibit "A," No. 2, *ante,* p. 446 *et seq.*]

And, whereas, It appears to the mayor and board of aldermen that the tickets as provided for above were duly printed, and the same were supplied to the voters at the election in sufficient number as required; and, whereas, it further appears to the mayor and board of aldermen that the following notice to the qualified electors of the municipality was duly published in the *Hazlehurst Courier,* a weekly newspaper published in the municipality, for a period of three consecutive weeks before the time of holding the election, as is required by § 3016, annotated code of 1892, which said notice is herein below set out in full, and the said notice copied with a copy of the affidavit of the publisher is annexed to this ordinance, and made a part thereof, and is hereby required to be copied by the clerk as a part of this ordinance, in the order in which it is annexed. to same, the original being on file with the city clerk, the said notice being as follows, to wit:

[Here follows Exhibit "A," No. 3, *ante,* p. 447.]

And, whereas, It appears from the report of the commissioners above mentioned, which said report is herein below given in full, and made a part of this ordinance, that the election was held on the 24th day of September, 1901, in pursuance to a previous notice given to the qualified electors of the municipality, that the election would be held on the 24th day of September, 1901, which said report is as follows, to wit:

[Here follows Exhibit "A," No. 4, *ante,* p. 448.]

And, whereas, The mayor and board of aldermen have canvassed the returns, and counted the vote, and have examined the poll books, and tally lists, and the lists of names of the voters, and find that the report of the commissioners herein is in all respects correct; and, whereas, the mayor and board of aldermen of the town of Hazlehurst have examined the registration books of the qualified voters in the town of Hazlehurst, and find that there are one hundred and seventy-eight qualified

electors in said town, it is therefore declared by the mayor and board of aldermen of the town of Hazlehurst that the proposed issue of $35,000 of the bonds of the town of Hazlehurst, for the purpose of erecting an electric light and waterworks plant in said town, was carried by a vote of more than two-thirds of all the votes of all the qualified electors of the town of Hazlehurst.

Now, therefore, be it ordained by the mayor and board of aldermen of the town of Hazlehurst:

*First.* That the election for the purpose of ascertaining the sense of the qualified electors of said town upon the question of the issuing the bonds for the erection of an electric light and waterworks plant in the town of Hazlehurst, said bonds not to exceed the sum of $35,000 was carried in favor of the issue of said bonds.

*Second.* For reasons that are sufficient to the mayor and board of aldermen, this ordinance shall take effect at once.

*Third.* The above ordinance and resolutions having been previously reduced to writing, was read and considered by sections at a full and regular public meeting of the mayor and board of aldermen, held on the first Tuesday the 1st day of October, 1901, in the mayor's office of the town of Hazlehurst, and the vote on the final passage having been taken by "yeas" and "nays," it was unanimously carried and adopted. I. N. Ellis, R. S. Norman, B. F. Johnson, J. D. Dampeer, and W. M. Ainsworth all voting "aye."

## EXHIBIT "A," No. 6.

### ORDER DIRECTING ISSUANCE OF BONDS.

At a regular meeting held at the mayor's office on Tuesday the 4th day of February, 1902. there being a full board present, the following order was made:

Section 1. It is ordered that $35,000 of the bonds of the town of Hazlehurst be issued for the purpose of constructing electric lights and waterworks for the said town of Hazlehurst,

which bonds shall be issued in sums of $100 and $500 each, and shall mature as follows. $100, April 1, 1903; $100, April 1, 1904; $100, April 1, 1905; $100, April 1, 1906; $100, April 1, 1907; $100, April 1, 1908; $100, April 1, 1909; $100, April 1, 1910; $100, April 1, 1911; $100, April 1, 1912; $100, April 1, 1913; $100, April 1, 1914; $100, April 1, 1915; $100, April 1, 1916; $100, April 1, 1917; $100, April 1, 1918; $100, April 1, 1919; $100, April 1, 1920; $100, April 1, 1921; $100, April 1, 1922; and $33,000, April 1, 1922.

Sec. 2. Said bonds shall be dated April 1, 1902, and bear interest at five per centum per annum from date, said interest shall be paid on the 1st day of April annually.

Sec. 3. Said bonds shall be lithographed and signed by the mayor, and countersigned by the clerk, who shall impress the municipal seal upon each bond, and shall have interest coupons attached to each of said bonds, which shall have lithographed signatures of the mayor and clerk of this board, and such lithographed signatures shall be in all respects as binding upon the town of Hazlehurst, as the original signatures of said mayor and clerk of said town would be.

Sec. 4. Each bond shall specify upon its face the purpose for which issued, and shall be made payable to the party to whom said bonds shall be sold, followed by the words "or bearer."

This order was adopted by the following vote: I. N. Ellis, J. D. Dampeer, R. S. Norman, B. F. Johnson, and W. M. Ainsworth voting "aye."

### EXHIBIT "A," No. 7.

ORDER DIRECTING THE ADVERTISEMENT OF THE BONDS FOR SALE.

At an adjourned regular meeting, held on the 5th day of February, 1902, the board adopted the following resolution:

"It is hereby ordered by the board of aldermen of the town of Hazlehurst, that the mayor be, and is hereby, directed to

advertise for sale, in such papers as he may see fit, the bonds of the town ordered to be issued for the purpose of erecting electric lights and waterworks for the town, said advertisement shall call for sealed bids to be filed on the first Tuesday of March, 1902, at the regular meeting of the board on that date. The board hereby reserves the right to reject any and all bids for said bonds. Each shall be required to deposit a certified check equal to ten per centum of the face value of the bonds bid for."

Minutes signed by E. M. Cook, mayor, and J. M. Norman, clerk.

### EXHIBIT "A," No. 8.

ORDER APPOINTING COMMITTEE TO SELL BONDS.

At a regular meeting begun and held in the mayor's office on the 4th day of March, 1902, all the members being present, the following order was passed:

"Ordered, that the mayor appoint a committee of two, the mayor to act with them, to negotiate the sale of the bonds for the purpose of erecting the electric light and waterworks plant, and report to the board, whereupon the mayor appointed I. N. Ellis and R. S. Norman to act with him on said committee."

Minutes of this meeting signed by E. M. Cook, mayor, and J. M. Norman, clerk.

### EXHIBIT "A," No. 9.

REPORT OF COMMITTEE, AND SALE OF BONDS ADJUDGED.

At a regular meeting begun and held in the mayor's office on Tuesday the 1st day of April, 1902, the following report of the committee, and the following resolution was adopted, and order passed:

"Whereas, on the 4th day of March, 1902, a committee con-- sisting of the mayor, E. M. Cook, and aldermen, I. N. Ellis and R. S. Norman, were appointed by the mayor and the board of aldermen of the town of Hazlehurst to negotiate the sale of the said bonds of the said town, amounting to $35,000, hereto-

fore authorized to be issued for the purpose of building elec-
tric lights and waterworks for said town, and said committee
being now present, report that, after diligent inquiry, the best
offer for said bonds were made by W. S. Jones, of Vicksburg,
Mississippi, and the Bank of Hazlehurst, the said W. S. Jones
offering for $20,000 of said bonds the sum of $20,200, and the
said Bank of Hazlehurst offering for $15,000 of said bonds the
sum of $15,150. It appearing that the foregoing bids for said
bonds are the highest and best bids obtainable for said bonds.

"Be it therefore hereby ordered, that said bonds be sold to
the foregoing named bidders, at and for the price bid for them,
respectively, and that upon the payment of the said sum of
$20,200 to the treasurer of the town by said W. S. Jones,
$20,000 of said bonds be delivered to him; and that upon the
payment by the said Bank of Hazlehurst of $15,150 to said
treasurer, $15,000 of said bonds be delivered to the said bank.
Ordered this the 1st day of April, 1902. Minutes signed by
E. M. Cook, mayor, and J. M. Norman, clerk."

Objections to the foregoing record specified in the bill of
complaint.

1. None of the ordinances relating to the issuance of said
bonds conformed to § 3006 of the annotated code of Missis-
sippi, which provides, among other things, that "the style of
all ordinances shall be 'Be it ordained by the mayor and board
of aldermen of the city (town or village as the case may be)
of ——————,' " and none of them were published as required
by said section of said annotated code.

2. It does not appear from the minutes of said board that
any of the ordinances, except the ordinances passed at the
October meeting of said board, were read and considered by
sections, and that "the vote on their final passage" was taken by
yeas and nays.

3. Said ordinances do not conform to § 3008 of said anno-
tated code, which requires that "an ordinance shall not contain

more than one subject, which shall be clearly expressed in its title."

4. The notice given of the election for the issuance of bonds was not published for the length of time required by law.

5. There was no official ballot provided for said election as the law requires.

6. Said ballots used in said election were indefinite, vague, and uncertain in this, that they did not indicate the amount of bonds authorized to be issued by such election, and did not state that they were the bonds of Hazlehurst which were proposed to be issued.

7. Said election was neither ordered nor held for the purpose of determining whether the voters of said town would authorize the issuance of the bonds of the same for the erection of waterworks or an electric light plant, but said election was held and ordered to be held for the purpose of determining whether the voters of said town would authorize the issuance of bonds for the joint purpose of erecting waterworks and an electric light plant, and there is no provision of law for submitting the question of the authority of the mayor and board of aldermen to issue bonds for a joint or double purpose as was done in this case.

8. The provisions of § 3015 of said annotated code of Mississippi that "such bonds, or any part thereof, shall be payable after five years, at the option of the municipality," are entirely ignored in the plan for issuing the bonds of said town.

9. The provision of § 3017 of said annotated code is evaded and sought to be made of no effect by the provision that one hundred dollars of said bonds shall mature annually for nineteen years, and that all of the balance shall mature in twenty years.

*J. S. Sexton*, for appellant.

The first and one of the most serious objections found in the proceeding is that the ordinances (if they are ordinances)

providing for the issuance of bonds, do not conform to § 3006 of the code. By reference to the ordinances themselves it will be seen that they are not styled as said section provides that they *"shall be."* When we remember how little attention is now paid to the mere matter of form, I confess that it would seem a little strange if an otherwise valid ordinance should be held to be invalid for the reason that it did not begin with the words, "Be it ordained," etc., and I have not considered this feature of the case as being very serious, but, at the same time, here is a chapter devoted to municipalities, the purpose of which is to make the resolutions of the various municipalities of the state conform as nearly as practicable to some given standard, and here is a standard for the styling of the ordinance which was not complied with. A very much more serious error, in my judgment, is noted in the closing paragraph of the first objection, and that is that none of the ordinances were published as required by said section. The only possible answer to this criticism is that the orders in reference to this matter were not "ordinances," but mere "orders," or "resolutions" of a temporary nature, and that they were not referred to in this section.

This is the view taken by the chancellor, and it may be correct, but, with all due respect to the learned chancellor, I very much doubt the correctness of his conclusions. To start on, the ordinance, Exhibit "A," No. 2, is the very sub-stratum of this whole business of issuing bonds by the town. This ordinance provided that an election should be held, when it should be held, how it should be held, and the purpose for which it should be held, and, without it, of course, no valid issuance of the bonds could be thought of, and yet it was never published, and before it could go into effect as provided for by § 3006 of the code, the election was held under it by which these bonds were authorized to be issued. In this connection I desire to call the court's attention to the fact that § 3009 of the code, in speaking of ordinances, provides that "The clerk shall

keep a well bound book to be styled "Ordinances," . . . in which he shall enter . . . every ordinance, etc. The closing paragraph of this section provides that "The ordinances to be so recorded are those which are, in their nature, laws of the municipality, and not orders or decrees temporary in their nature." Here we find the word "ordinance" used to embrace all orders passed by the board, but we find that those "orders," or "decrees," which are temporary in their nature, do not have to be recorded.

There is no exception as to the publication of such ordinances found in § 3006 of the annotated code, and it looks very much to me as if all ordinances, whether temporary or otherwise, are required to be published. Which is perfectly consistent with a public policy that nothing should be done by the mayor and board of aldermen of the town which should not be published to the world, and, when it is remembered that this ordinance of September 3, 1901, was the very ground work of the issuance of $35,000 of bonds, and that the order passed at the October meeting of the board, which is marked Exhibit "A," No. 5, certifies the result of the election, and provides for the details of the issuance of these bonds, which are, in their nature, a mortgage upon all the property of the town of Hazlehurst, it certainly cannot be said that they are mere temporary "orders" or "decrees," even if such are not required to be published as they are not required to be recorded.

I know, of course, that there is a difference between orders and resolutions, which are temporary in their nature, and ordinances of a permanent nature; and I know, furthermore, that this order, Exhibit "A," No. 2, is put in the shape of a resolution, but, at the same time, the order passed at the October meeting, Exhibit "A," No. 5, is called an "ordinance," and this particular ordinance was styled and passed as ordinances are required to be passed, but the mere naming of these orders do not fix their character, which must be determined

from the orders themselves, and I think that they are ordinances, and, that too, of a very serious and far-reaching nature.

This brings me to the second objection to the ordinances mentioned in the bill, and the second and third objection might as well be treated together. They are both predicated of the idea that we are dealing with ordinances, and that the provisions of §§ 3006, 3007, and 3008 of the code are mandatory, and not merely directory. I know of no decision which throws any light upon this particular feature of the subject, but there is a deep and well settled public policy to be served by requiring, as § 3007 does require, that ordinances shall be read and considered by sections at a public meeting of the mayor and board of aldermen, and that the vote on their final passage shall be taken by "yeas" and "nays," and that such vote shall be entered on the minutes of the clerk.

The same is equally true of the requirements of § 3008, and it is not even claimed that any of the ordinances, save and except the ordinance passed at the October meeting of the board, conformed to the requirements of said §§ 3006, 3007, and 3008. The origin of § 3007 is found in sec. 55 of the constitution, the closing paragraph of which provides that " 'the yeas and nays' shall be entered on the journal on the final passage of every bill." The origin of § 3008 is probably found in sec. 71 of the constitution, which provides, among other things, "Every bill introduced into the legislature shall have a title, and the title ought to indicate clearly the subject matter or matters of the proposed legislation." When the framers of the code chapter on "municipalities" were providing how municipal laws should be enacted, complying with this public policy of the state in reference to the passage of laws and making the same applicable to municipal laws, §§ 3006 and 3007 of the code were adopted, and their force ought not to be minimized by declaring them directory instead of mandatory.

The fourth objection to the election of which the bonds were predicated, raised the question whether the notice published

was sufficient, and the fifth objection is predicated of the fact that there was no official ballot, and these two objections may very well be treated together. Section 3034 of the code provides that "all provisions of law on the subject of state and county elections, so far as applicable, shall govern municipal elections." I hardly think there is any merit in the objection that sufficient notice was not given, but the objection that an official ballot was not used, appears to be well taken. Section 3028 provides who shall be entitled to register and vote at all municipal elections. Section 3032 provides for the printing and distribution of an official ballot.

It occurs to me that an election upon the question of whether the town shall issue bonds for waterworks, is as much an election as one directed to ascertain who shall be mayor. Section 3035 provides for an election as to whether any municipality shall come under the code provisions, and tells what shall be printed on the ballots. For instance, those in favor of the code provisions shall have printed on their ballots "For the code provisions," and those opposed "Against the code provisions," and while nothing is said in this section of the code in reference to official ballots, there is certainly no exception made that would indicate that anything other than official ballots should be used in this election. The same is true of the instant election.

The sixth objection is to the form of the ballots which was used in the election. By reference to the ordinance passed on the 3d of September, 1901, which provided for the printing of ballots for this election, it will be seen that a voter was called upon to vote "for the issuances of the bonds for the erection of electrical lights and waterworks," or "against the issuance of the bonds for the erection of electric lights and waterworks." It will be observed that these ballots did not indicate what bonds were to be issued, or the amount of bonds to be issued; whether the same were to be issued by the town of Hazlehurst, or by some other town or corporation, or what amount should be issued for the purpose indicated. "A ballot has been de-

fined to be a ticket or slip of paper, on which is written or printed an expression of the elector's choice as between candidates or propositions to be voted for," 10 Am. & Eng. Enc. Law, 708; and it occurs to me that when the question submitted to a voter to be acted upon is a "proposition," it is just as necessary that that proposition shall be stated in the ballot as it is necessary that the name of a candidate shall be stated in the ballot, when the voter is called upon to choose between men instead of measures. I think this ballot is too indefinite to determine anything, and that an election predicated of it does not justify the mayor and board of aldermen in issuing bonds.

I do not think that the seventh objection has much merit, but it is submitted for what it is worth to be passed upon by the court.

The eighth objection is predicated of the idea that § 3015 of the annotated code was ignored, as this section of the code provides that "such bonds, or any part thereof, shall be payable after five years, at the option of municipality." It is not claimed that there is any such provision either in the face of the bonds or in the ordinances providing for the issuance of the same, and if it be absolutely necessary that such provision shall appear somewhere, then these bonds are invalid. I am inclined to the opinion that notwithstanding the failure of the record to show any such provision, such bonds are subject to this provision of the code just as if such provision were written in the face of the bonds, and that this objection would not militate against the bonds; but while I was pointing out objections to the same, I pointed out all that occurred to me.

An effort was made to evade the force of this section of the code, and to issue these bonds under the provision of § 3017 of the annotated code "making a part of them mature annually." When we look to the record we find that nineteen bonds were issued for one hundred dollars each, payable on the 1st day of April, 1903, 1904, etc., to the year 1921, and $33,-100 of the same were to mature on April 1, 1922. This ap-

pears, upon its face, to be an attempted evasion of the provisions of § 3017 of the code, which would seem to indicate that the board ought to make a substantial amount of the bonds payable each year, but I am impressed that the provision of this section, that "all the interest in such case and a part of the principal, to be fixed by the board at the time the bonds were issued, shall be payable annually," leaves to the discretion of the board what amount of bonds shall so mature, and that there is not much force in this criticism. In other words, I see no reason why an individual, giving out his paper to run twenty years, might not divide up its maturity as he sees fit, and I am impressed that the legislature intended to leave it to the board, within the time named, to make such provision as to the maturity of the bonds as it saw fit.

*Robert B. Mayes,* for appellee.

As to the first and second objection raised by counsel, I will answer them together. It grows out of his misinterpretation according to my view of what is and what is not an ordinance.

*An ordinance* prescribes a permanent rule of government or conduct.

*A resolution* is of a temporary character, and prescribes no permanent rule of government. 17 Am. & Eng. Enc. Law (1st ed.), 235.

Again, the same authority, which is but repeating the text of all the authorities that I have investigated on the subject, says that "where a common council is authorized to do an act, but the mode of doing it is not prescribed, it may be done by resolution as well as by ordinance." 17 Am. & Eng. Enc. Law (1st ed.), 236, and notes.

Counsel complains that *the resolution* of the mayor and board of aldermen, declaring it to be their purpose to hold an election for the purpose of ascertaining the sense of the voters of the town, was not itself published. This is true, but the law does not require that it shall be.

· Section 3006, code 1892, provides that "all ordinances and allowances shall, as soon as practicable after they are passed, be published," etc.; but in as much as the resolution of the board was neither an *ordinance* nor an *allowance,* it clearly did not have to be published. The code nowhere requires that mere resolutions, temporary in their character, have to be published, but it expressly negatives this idea in § 3009. This was a mere resolution· on the part of the board, and was not intended to have the lasting effect of an ordinance, and was exhausted with the doing of the one act under it. It could not therefore be an ordinance.

Following up this resolution of the board, notice was published as required by § 3016 of the code, as will be seen by an examination of the record before the court.

Notice that complied in every respect with the requirements of § 3016, after this notice was published, and no one appearing to protest, then the board, by resolution, appointed commissioners to hold the election, and by the same resolution appointed the time that they should hold the election, and required them to give notice of the same, which they did, full and ample notice, of the time that they would hold the election, and had it published for three weeks. In reading the record, and then reading § 3016, "What to be done before issuing the bonds," it will be seen that no provision.is made in § 3016 for the mode that the mayor and board of aldermen shall adopt in putting into effect the declared sense of the voters, therefore, after the election on the notice therein provided for, resulting in favor of the issuance of the bonds, they can proceed to put in effect the will of the electors "by resolution as well as by ordinance." All the provisions of § 3016 with reference to the publication of the notice of the board of their intention to issue the bonds have been complied with, and there is not a hint in the record that the voters have not had the warning of the intention of the board.

As to the objection that there was no "official ballot," I have

to say that the requirements of the law in reference to an
"official ballot" was never intended to apply to a case of this
kind.    In the first place, no election was necessary in this
particular case, as there had been no protest filed, and though
it *was* necessary for the board to ascertain the sense of the
voters, and though it was necessary for them to have the ap-
proval of two-thirds of the qualified electors of the town, this
approval could have been obtained by petition as well as by
their vote.    I say that it was not necessary to have an election
in this particular case, because when I read §§ 3014 and 3016,
taking up § 3014 first, after providing in what cases the board
of mayor and aldermen shall have the right to issue the bonds
of the town, said board may issue the bonds or other obligations
of the city, town, or village, not to exceed in amount, including
all outstanding bonds, seven per centum of the assessed value of
the taxable property of the municipality unless authorized by
two-thirds of the qualified electors thereof," etc.    It is then
provided in § 3016, after the notice has been published, etc.,
"If within that time, twenty per centum of the adult taxpayers
of the municipality shall petition against the issuance of the
bonds, then the bonds shall not be issued, unless authorized by
a majority of the qualified electors voting in an election to be
ordered for that purpose."

It will be seen, therefore, that the ascertainment of the sense
of the municipality is not required to be done by an election,
unless there is a petition against the issuance of the bonds,
which there was not in this case.    Therefore, the mayor and
board of aldermen need not have held an election to obtain the
approval of two-thirds of the qualified electors, but may have
done it in any way that they had selected, provided they ob-
tained the approval of two-thirds of the qualified electors.    If,
therefore, it was not necessary to hold the election at all, of
course no official ballot was necessary, and I contend that it
would not be necessary in this kind of an election any way.

Neither in § 3014, nor § 3016, is an election required, unless there is a petition against the issuance of the bonds.

Section 3014 says that bonds for more than seven per centum shall not be issued "unless authorized by two-thirds of the qualified electors thereof," but it does not say that this authorization is to be had by an election. In § 3016 it is readily seen that the election therein provided for is intended only in the case contemplated by the statute where the bonds to be issued are less than seven per centum of the assessed value, and where there has been a protest filed against the issuance, for in that section it says, "If twenty per centum of the adult taxpayers of the municipality shall petition against the issuance of the bonds, then the bonds shall not be issued unless authorized by a majority of the electors voting in an election to be ordered for that purpose." It will thus be seen that the only time when it seems necessary to hold an election at all, is under the conditions provided for in § 3016. The law then being silent as to how the "authorization of two-thirds of the qualified electors" is to be obtained, it being only clear that the board must in some way obtain this authority from them, the board might select any method of doing this that they saw fit; provided, they obtained the requisite two-thirds, and having selected the ballot, the usual American way, they were not held to observe any strict regulation on the subject, but might, and did, provide their own official ballot.

The bonds are issued under the authority of § 3017, code 1892, with reference to the time that they shall mature. This statute has been literally observed, and was selected because the town could get a better price for the bonds issued under it, and could make their payments easier. There is no hint in the record of any fraud attempted in any way. If the board was wrong, there is nothing in what they have done to invalidate the bond, though it may be that all the bonds are five-year bonds instead of twenty-year bonds.

WHITFIELD, C. J., delivered the opinion of the court.

None of the objections to the validity of the bonds are well taken. They are perfectly valid. The proceedings of the mayor and board of aldermen show the utmost care, and are characterized by the most scrupulous observance of the law. The only thing we deem it worth while to say is that whenever the proposed bonds "exceed in amount seven per centum of the assessed value of the taxable property of the municipality" there must be an election. That was expressly decided in *Town of Clarksdale* v. *Broaddus,* 77 Miss., at page 672 (28 So., 955), last sentence of the opinion. But there was an election here, duly held. The "official ballots" provided for in § 3032 of code of 1892 are to be used in voting for municipal officers. They are not necessary in elections of this kind. There is nothing else worthy of remark by us. The reporter will set out all the objections, for the guidance of municipal authorities.

*Affirmed.*