ROSENSTOCK *v.* BOARD OF SUPERVISORS OF WASHINGTON COUNTY ET AL.

[72 South. 876.]

1. COUNTIES. *Bonds. Election. Notice. Publication. Statutes. Title. Sufficiency of title. Appeal and error. Review. Questions to be decided.*

Chapter 174, Laws 1916, which is an amendment to chapter 176, Laws 1914, does not require any publication of the intention of the board of supervisors to issue road bonds, where the petition presented shows that the proposed bond issue is in excess of five hundred thousand dollars; when the bond issue is to be in excess of five hundred thousand dollars the board of supervisors is by the statute required to order an election to ascertain the will of the qualified electors of the county.

2. COUNTIES. *County bonds. Notice. Publication.*

Where the notice of an election for a road bond issue, was the publication in newspapers of the county, for four weeks of the order of the board of supervisors calling the election and also the publication for the same length of time of the notice of the election given by the election commissioners of the county, the law was fully complied with. The statute does not prescribe any specific form of notice and such publication of notice fully advised the electors of the proposed elections.

3. STATUTE. *Title. Sufficiency.*

Where a statute has a title, its sufficiency was a legislative and not a judicial question.

4. APPEAL AND ERROR. *Review. Questions to be decided.*

The supreme court is not called on to decide the legal aspect of a purely imaginary contingency.

5. COUNTIES. *Bonds. Statutes. Sufficiency.*

Since Laws 1914, chapter 176, section 11, requires the consent of the taxpayers themselves to the issuance of bonds for road taxes, the act is not subject to attack on the theory that bonds might be issued to such an amount that they would become confiscatory, for taxpayers if same would not consent to such confiscation, and the courts are not bound to protect them from their folly.

6. COUNTIES. *Bonds. Limitations.*

Section 331, Code 1906, relating to issuance of bonds by the board of supervisors, prohibits the issuance of bonds to an amount which added to all of the bonded indebtedness of a county shall exceed five per cent. of the assessed value of the taxable property appearing on the assessment roll. Laws 1914, chapter 176, as amended by Laws 1916, chapter 174, authorizes the issuance of highway bonds on a vote of the qualified electors without limitation. These two acts are not irreconcilable, since the first imposes limitation on the powers of the board of supervisors, while the latter merely authorizes the taxpayers to tax themselves.

APPEAL from the chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Bill by Morris Rosenstock against the board of supervisors and the highway commission of Washington county. From a judgment sustaining a demurrer to the bill, complainant appeals.

The facts are fully stated in the opinion of the court.

*D. S. Strauss,* for appellant.

*Percy & Percy* and *Wm. Ray Toombs,* for appellees.

COOK, P. J., delivered the opinion of the court.

This case involves the validity of a proposed issue of nine hundred and fifty thousand dollars of Washington county bonds, for the purpose of building permanent roads, and in turn involves a construction of chapter 176, Laws 1914, and chapter 174, Laws 1916, being the statutes under which Washington county proposes to issue and sell said bonds.

The facts are these: Almost immediately after the passage of the act of 1916, to wit, on the 24th of April, 1916, the board of supervisors of Washington county were petitioned to submit to the voters of the county the question of a bond issue for the building of permanent roads, under the provisions of chapter 174, Laws 1916, and chapter 176, Laws 1914; the petition reciting that the amount of the proposed bond issue was in excess of five hundred thousand dollars, and that the boundaries of the proposed district included all of the territory embraced within the county. The total number of qualified electors in the county were one thousand three hundred and thirteen, and more then twenty per cent., to wit, three hundred and ninety-six, signed the petition. Thereupon the board ordered the election, the order complying with the statute, and fully setting forth the purposes for which the election was to be held. A copy of the order was published in the newspapers published in the county for four successive weeks, and the commissioners of election gave four weeks' notice of the election by publication in the Greenville Democrat, a newspaper published in the city of Greenville, and having a general circulation in the county. At the election, out of one thousand three hundred and thirteen qualified electors, eight hundred and twenty-five voted in favor of the bonds, and one hundred and ninety voted against such issuance. Thereafter, at a regular meeting of the board of supervisors, on the 6th day of July, 1916, the board ordered the issuance of nine hundred and fifty thousand dollars of bonds. The total assessed valuation of the taxable property in the county is nine million, six hundred thirty-two thousand, six hundred and twenty-one dollars. The highway commission passed an order fixing the amount of the bonds to be issued, the form, maturity, rate of interest, etc., and the board of supervisors, it is alleged, at its November meeting will adopt the recommendations of the highway commission, and will direct the issuance of said bonds

in accordance therewith. These facts are set forth in the bill, and admitted by the demurrer.

The objections made by appellee to the bond issue are:

(1) There was no notice given by publication in accordance with the terms of chapter 176, Laws 1914. There is no merit in this objection, because chapter 174, Laws 1916, which is an amendment to chapter 176, Laws 1914, does not require any publication of the intention of the board of supervisors to issue bonds, when the petition presented shows that the proposed bond issue is in excess of five hundred thousand dollars. When the bond issue is to be in excess of five hundred thousand dollars, the board of supervisors is by the statute required to order an election to ascertain the will of the qualified electors of the county.

(2) It is objected that proper notice of the election was not given. The notice given in this case was the publication in newspapers of the county, for four weeks, of the order of the board of supervisors calling the election, and also the publication for the same length of time of the notice of the election given by the election commissioners of the county. The law was fully complied with, and it follows that the objection is not well taken; the facts of record do not sustain appellee's contention.

It will be noted that a majority of the qualified electors of the county did actually vote in this election for the issuance of the bonds. The statute does not prescribe any specific form of notice, and in this case the notice published fully advised the electors of the proposed election, and a majority of the electors did vote for the bond issue. *Kemp* v. *Hazlehurst,* 80 Miss. 443, 31 So. 908.

The third objection challenges the sufficiency of the title of the act of the legislature under which it is proposed to issue bonds. This objection is of no merit, as the act in question has a title; its sufficiency was a

legislative, not a judicial, question. *State* v. *Phillips,* 67 So. 651, L. R. A. 1915D, 530.

The road district created in this case is composed of and takes in all the county of Washington, and the objection insists that it is within the power of the inhabitants of the county to create subroad districts *ad infinitum,* and until the burden of taxation will be confiscatory—and when this happens—nothing would be left to tax to secure money with which to liquidate the bonds in question. If it can be imagined that the taxpayers would possibly consent to the confiscation of their property, it seems a sufficient answer to this suggestion to say that we are not called on to decide the legal aspect of a purely imaginary contingency. We would be bound to assume that the owners of Washington county might hereafter become insane, and more than that, we would be bound to assume that bond buyers would also become insane, before we could admit that such a condition was possible.

However, we will try to think that the contingency is possible, and what then? We answer that section 11, chapter 176, Laws 1914, would meet the situation. and would save the taxpayers from themselves. Their property could not be subjected to the burdens which appellee apprehends, unless they consented, and as lunatics cannot consent, the taxpayers of Washington county would be entirely safe. Besides all this, we can see no legal reasons why the courts should intervene to protect the taxpayers from the consequences of their own folly. If the taxpayers elect to burden themselves with confiscatory taxation it is not within our power to save them. The taxpayers, generally speaking, have the constitutional right to give away their property. The question here presented may appeal to the legislative department.

The next objection is, that the county of Washington has already issued bonds under the authority of section 331, Code 1906, and the amount of the bonds so issued,

added to bonds to be issued in this case, will exceed the "five per centum of the assessed value of the taxable property of the county."

Section 331 provides for an entirely different class and character of bonds than the bonds proposed to be issued in the present case. Moreover, it is quite clear that section 331 had no reference to the sort of roads provided for in the case before us.

We have made progress since the passage of section 331, and Washington county is now embarked upon a system of road improvement undreamed of in 1906; but be that as it may, the act under review depends upon the consent of the people who are to pay the price, and it is quite evident to us the legislature did not intend that the scheme here discussed should be limited in its scope by section 331.

There is no inconsistency in the two statutes; both may stand. The board of supervisors must go to the people for authority to exceed the limit fixed by section 331 of the Code, and that has been done in the manner prescribed by the statute.

The demurrer to the bill of complaint was properly sustained, and the judgment of the lower court is affirmed.

*Affirmed.*