## LANG v. BOARD OF SUPERVISORS OF HARRISON COUNTY.

[75 South. 126, Division B.]

1. STATUTE. *Construction. Amendments.*

Chapter 172, Laws 1916, in reference to road districts, seeks to amend Laws 1912, chapter 258, which was an act to amend Laws 1910, chapter 150. It is contended, that as Laws 1912, chapter 257, which was amended by Laws 1916, chapter 177, and also amended Laws 1910, chapter 150, was enacted after the enactment of Laws 1912, chapter 258, the result was that Laws 1912, chapter 258, was amended by Laws 1912, chapter 257, and was no longer a law, and hence the legislature did not amend any existing law in enacting Laws 1916, chapter 172. In this contention the court held that in amending chapter 258, by chapter 172, the legislature revived and revitalized that act even though it had been amended by chapter 257 of the Laws of 1912, and each chapter should be treated as an amendment of the preceding law upon the same subject, making Laws 1910, chapter 172, the latest expression of the legislature upon the particular road scheme created by Laws 1910, chapter 150.

2. STATUTE. *Sufficiency of title as a legislative question.* "*Ought.*"

Under section 71, Constitution 1890, providing that every bill introduced into the legislature shall have a title, and the title ought to indicate clearly the subject-matter of the proposed legislation, where a statute has a title, its sufficiency is a legislative and not a judicial question, the word "ought" in such section being used in an admonitory or advisory sense.

3. STATUTES. *Subject and title. Construction. Sufficiency of title.*

Under Constitution 1890, section 71, an act entitled: "An act to provide additional methods to work public roads," which is the title of chapter 150, Laws of 1910, would be sufficient because all the matters contained in said act and its amendments are germane to roadworking.

4. COUNTIES. *Highway bonds. Statutes. Construction. Constitutional provisions.*

Section 331, Code 1906, authorizes a county to issue bonds for certain purposes and section 333, provides that the board of supervisors shall publish notice of proposal to issue bonds, and that if ten per cent of the taxpayers protest, the bonds shall not be issued, unless authorized by an election ordered by the board for that purpose. Laws 1916, chapter 172, does not require notice

to be given to the electors or taxpayers before bonds may be issued thereunder, and section 1 of the act authorizes the board of supervisors to do any and all things necessary to be done to work the roads in addition to present methods, and section 2 empowers the board to raise funds for working roads by a bond issue not to exceed five per. cent of the assessed valuation, exclusive of outstanding bonded indebtedness. Constitution 1890, section 170, provides for a board of supervisors and that the board shall have full jurisdiction over roads, etc., to be exercised in accordance with the regulations prescribed by the legislature, and perform such duties as may be required by law. Constitution 1890, section 85, makes it the duty of the legislature to provide by general law for the working of public roads, which law may be put in operation only by a vote of the board of supervisors in those counties where it may be desirable. The board of supervisors of Harrison county proposed to issue bonds under Laws 1916, chapter 172, amending Laws 1910, chapter 150, without notice or the holding of an election. Code 1906, sections 331 and 333 had never been adopted by Harrison county. There was an outstanding bonded indebtedness incurred under Laws. 1910, chapter 149, and its amendments. In such case the court held that, as there is no constitutional provisions requiring a submission to the people as a necessary step in the issuance of bonds, and as chapter 172 involves a road district scheme as distinguished from and separate from the county road scheme, in the absence of a requirement in chapter 172 for notice of an intention to issue bonds and for an election on the subject, the board of supervisors had absolute discretion to issue the bonds under the act without notice of their intention so to do.

5. STATUTES. *Local, private or special highway laws. Construction. Constructional provisions.*

Chapter 172, Laws 1916, is not violative of Constitution 1890, sections 90, par. L, which provides that the legislature shall not pass any local, private or special laws for the laying out, opening, altering, and working of roads and highways, since chapter 172 applies throughout the state, subject only to its adoption in accordance with section 85 of the Constitution.

6. COUNTIES. *Highway bonds. Statutes. Validity.*

Laws 1916, chapter 172, is not invalid in failing to provide for the date of maturity of the bonds or the amount or contents to be expressed in the bonds, since this was a matter of administration and detail for the consideration of the board of supervisors and bond buyers.

APPEAL from the chancery court of Harrison county. HON. W. M. DENNY, Chancellor.

Suit for injunction by John H. Lang against the board of supervisors of Harrison county. From a decree sustaining defendant's separate demurrer and dismissing the bill, plaintiff appeals.

The appellant filed a bill in the chancery court of Harrison county seeking to enjoin the board of supervisors from issuing road bonds in districts Nos. 1, 2, and 3 of said county under chapter 172 of the Laws of 1916. He alleges that he is the owner of property in each of the said districts, setting forth the description and value of some of the property in each of the districts, alleges that the board of supervisors has determined to issue bonds in the said districts amounting in total to four hundred and ninety thousand dollars, being one hundred and sixty thousand dollars for district No. 1 of said county two hundred and fifty thousand dollars for district No. 2, and eighty thousand dollars for district No. 3, and that the issuance of said bonds will become a charge against the property situated in the said several supervisors' districts, and not against the county at large, and that the said moneys are proposed to be expended in the said districts, and not in the said districts Nos. 4 and 5; a considerable portion of said moneys is to be used in building, constructing, and maintaining the road along the Gulf of Mexico and other roads leading from the city of Gulfport in a northerly direction to said highways constituting the most extensively traveled and used highways, but that they are not used exclusively by the residents of said district, but also by nonresidents and people of other counties of the state and by the property owners of districts Nos. 4 and 5; that the board of supervisors had accepted bids for the above-named bonds; that unless restrained that they would be sold to Sidney Spitzer & Co., the proposed purchasers thereof; and that unless enjoined they would be delivered within a short time. It is fur-

ther alleged that the roads of the county were worked under chapter 168 of the Laws of 1890 up until the said chapter was repealed by chapter 345 of the Laws of 1914, that the board had never adopted the contract system of working the public roads contained in chapter 123 of the Code of 1906 and amendments thereto, and that said system is not in force in the said county, but that heretofore the board had been operating under chapters 257 and 258 of the Laws of 1912, or some law other than the Code sections, and that it is not within the power of the said board of supervisors to now operate in said district separately within the provisions of chapter 172 of the Laws of 1916, and allege that the board could only avail itself of chapter 172, Laws 1916, in case that they had been heretofore operated under that method of working the roads of the county, and that the attempt of the board to come under the provisions of chapter 172 of the Laws of 1916 is void; and it is charged that the said chapter itself is void and of no effect because the said chapter purports to amend chapter 258 of the Laws of 1912, entitled "An act to amend chapter 150 of the Laws of 1910 in regard to the working of public roads," and that the said chapter 258 of the Laws of 1912 is of no force and effect because chapter 258 of the Laws of 1912 was approved on February 24, 1912, and that at the same session of the legislature, subsequently thereto, that is, on the 6th day of March, 1912, chapter 150, Laws of 1910, was amended by chapter 257 of the Laws of 1912, and that said chapter 257 was thereafter amended by the legislature of 1916 and constitutes chapter 177 of the Laws of 1916, and is now, in contemplation of law, chapter 150, Laws of 1910, and further that chapter 177, Laws of 1916, repealed chapter 258, Laws of 1912, and that chapter 172 of the Laws of 1916 did not revive chapter 258 of the Laws of 1912, under which said chapter the board proposes to issue bonds in this case. It is alleged that the assessed valuation of the property for taxation of

district No. 1 is three million, three hundred and fifteen thousand, four hundred and ninety-seven dollars, plus two hundred and thirty-eight thousand two hundred and seventy-three dollars public service assessment, and that the assessed valuation of taxable property in district No. 2 is five million six hundred and seven thousand seven hundred and thirty-eight dollars and ninety-five cents, and that the assessed value of the property of district No. 3 aggregated one million eight hundred and seventy-six thousand, two hundred and thirty-seven dollars, and that the total assessment of all the said districts does not exceed the sum of eleven million five hundred thousand dollars, and that prior to the proposed issue of bonds that there was outstanding against the county two hundred thousand dollars in bonds, and in district No. 2 fifty thousand dollars in bonds, district No. 3 fifteen thousand dollars in bonds, and that all of said bonds together would aggregate seven hundred and fifty-five thousand dollars, and that the aggregate of the bonds against districts Nos. 2 and 3 amounts to sixty-five thousand dollars, and that all of said sums would exceed five per cent. of the assessed value of said districts, and that therefore the proposed issue is void. It is alleged that it was the duty of the board of supervisors to give notice of its intention to issue the said bonds, and that it failed to do so, and that the taxpayers had no opportunity to protest against the issue of said bonds. It appears that the bonds for the said districts which had heretofore been issued were issued under chapter 149, Laws of 1910, as amended, which is a separate plan and chapter on road improvement from chapter 172, Laws of 1916. It appears that the moneys derived from these preceding bond issues had been expended and road commissioners discharged, and the roads had been taken over by the county in pursuance of chapter 178, Laws of 1914, prior to the adoption of chapter 172, Laws of 1916. It is further alleged that the board proposed to levy taxes on the real and personal property of

asid districts for the purpose of creating a fund to pay said bonds, and that this created a lien and cloud on the title of complainant. The orders of the board of supervisors on the several bond issues referred to and adopting the different laws referred to are made exhibits to the bill. The prayer of the bill was for an injunction to prevent the board from issuing and selling the bonds and Spitzer & Co. from buying and enjoining the board from levying tax to pay said bonds, and to enjoin the chancery clerk from issuing and signing the same. The bill was demurred to separately by the county and by Spitzer & Co., and the chancellor sustained the demurrers and dismissed the bill and granted this appeal.

*J. L. Taylor,* for appellant.

*T. M. Evans* and *L. Brame, Amicus Curiae* and *R. C. Cowan Co.,* for appellee.

Ethridge, J., delivered the opinion of the court.

(After stating the facts as above). Chapter 172, Laws of 1916, is attacked as being invalid for two reasons: First, that chapter 172 seeks to amend chapter 258 of the Laws of 1912, which was an act to amend chapter 150 of the Laws of 1910, and that the legislature amended the same act of 1910 subsequent to the enactment of chapter 258, which amendment constitutes chapter 257 of the Laws of 1912, which was amended by chapter 177 of the Laws of 1916, and that the legislature amended an act that was no longer a law, and consequently that chapter 172 would be invalid because the legislature had not amended any existing law in enacting the said chapter; and, second, that the act is unconstitutional because of an insufficient title and because it is a local law violating, it is claimed, section 71 of the Constitution and clause L of section 90 of the Constitution of 1890. Inasmuch as these objections lie

at the very threshold of the case, we will first notice them: In 1912 the legislature by chapter 258 of the Laws of 1912 amended chapter 150 'of the Laws of 1910 in regard to the working of public roads. This act was approved February 24, 1912, and again at the same session the legislature passed chapter 257, which is entitled "An act to amend chapter 150, Laws of 1910, entitled 'An act to provide additional methods of working public roads,'" providing that any ,supervisors' district may come under the said act. This act was approved March 6, 1912, and differs but slightly in verbiage from chapter 258; the main difference being that under chapter 257 the board of supervisors could work .any beat of the county as a separate road district, whereas under chapter 258 there was no provision for the working of less than a county in a road district. If we concede that chapter 257 of the Laws of 1912 supersedes and displaces chapter 258, it would not follow that the act of the legislature in 1916 in amending chapter 258 would be null and void. Chapter 172, Laws of 1916, was approved April 8, 1916, and chapter 177, Laws of 1916, was approved March 21, 1916, and therefore chapter 172 is the latest legislative enactment on the road scheme embodied in chapter 150 of the Laws of 1910. We think that the legislature in amending chapter 258 would have the effect of reviving and revitalizing that act even though it had been amended by chapter 257 of the Laws of .1912, and that it should be treated as though each chapter was an amendment of the preceding law upon the same subject. If we treat it thus, chapter 172 would be the latest expression of the legislature upon this particular road scheme, and this ground of objection is without merit.

In regard to the objection that the act is void because of the failure of the title to sufficiently indicate the subject-matter of the legislation, we think it would only be necessary to answer this by citing the cases of *The Mayor, etc., of the City of Jackson* v. *State,* 102 Miss.

663, 59 So. 873, Ann. Cas. 1915A, 1213, and *Rosenstock* v. *Washington County,* 72 So. 876, which cases are subsequent utterances of the court to the cases referred to in the brief in opposition to this law. In the case of *City of Jackson* v. *State,* 102 Miss. at page 684, 59 So. at page 874, Judge Cook, speaking on this subject, used the following language:

"Section 71 is also assigned to 'Rules of Procedure,' and it is visible from the choice of its language that the framers of the Constitution had in mind the ills and afflictions so graphically depicted by Judge Campbell in the case of *Ex parte Wren.* We do not wish to be understood as holding that section 71 is solely addressed to the legislative conscience, because this section requires a title for every law—and an act without a title would not be a law—and the violation of the Constitution would thus appear upon the face of the act. We use the construction placed by the court upon section 74 to emphasize our views of section 71. It is observable that this section is mandatory to the extent that 'every bill * * * shall have a title'; but, when it speaks concerning what the title should contain, the weaker word 'ought' is used. 'Ought' is a shade stronger than 'should,' but 'a shade is not to be seized to nullify an act of the legislature.' It is quite manifest that the words were carefully selected and advisedly used, the one being mandatory, and the other admonitory, or advisory. Thus it appears by sections 71 and 74 three 'shalls' and one 'ought' are addressed to the legislature."

In subsequent cases to this decided between the decision of the City of Jackson and the Rosenstock cases, above cited, hold that the sufficiency of the title is a question solely for the legislature. However, if this were not true, and if the cases cited were still in full force, still we think the title would be sufficient. An act entitled "An act to provide additional methods to work public roads," which is the title of chapter 150

of the Laws of 1910, would be sufficient, because all the matters contained in said act and in its amendments are germane to roadworking. Necessarily to provide additional methods for working public roads it is necessary to provide appropriate means of accomplishing a proper working of public roads. To work public roads it is necessary to provide a scheme of procuring the money necessary, as roads cannot be worked without having the necessary labor and material to work them. If money must be raised, then the methods of raising the money, including the power of taxation and the issue of bonds, would be an appropriate incident to the plan.

It is next contended that the board of supervisors must give notice of its intention to issue bonds to the qualified electors of the county, and that they be given an opportunity to protest against the issuance, and, if ten per cent. protest, to have an election thereon before the bonds can be issued; it being contended that chapter 172 is to be construed in connection with section 331 and section 333 of the Code of 1906. Chapter 172 is silent as to any notice to be given to the electors or taxpayers before the bonds may be issued. In section 1 of the act the board of supervisors, in addition to the present methods of working public roads of any county or beat thereof, may purchase teams, employ labor, etc., and may do any and all things necessary to be done to work the roads as herein provided, etc.; and section 2 of the act empowers the board to raise funds for working roads and building bridges by bond issue not to exceed five per cent. of the assessed valuation of the real and personal property of the several counties or districts, exclusive of outstanding bonds, etc. There is nothing at all said in this section about giving anybody any notice of the purpose of the board to issue the bonds or any scheme by which the taxpayers may pass on the proposed purpose of the board of supervisors. If the act is to be regarded as an addi-

tional method independent of other methods, as it seems to us it must be, then it follows that its own terms are to govern unless there is some general statute broad enough in its terms to make a contrary conclusion mandatory. In dealing with this question we must consider that the Constitution (section 170) provides for a board of supervisors and provides that:

The board "shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and perform such other duties as may be required by law."

The only limitation in this section is that the board shall exercise its powers in accordance with the regulations prescribed by the legislature, and where the legislature has prescribed no regulation the board has full jurisdiction and power over the subject. Section 85 of the Constitution makes it the duty of the legislature to provide by general law for the working of public roads by contract or by county prisoners or both. Such law may be put in operation only by a vote of the board of supervisors in those counties where it may be desirable. The word "contract" in this section is to be used in a broad sense, and is not limited to any particular kind of contract. To carry out the scheme of chapter 172, Laws of 1916, it is necessary for the board to make contracts. Section 90, par. L, is not applicable to this law because the law is in no sense a local law, but applies throughout the state, subject only to its adoption in accordance with section 85 of the Constitution. The Code sections bearing on road laws were never adopted in Harrison county, and section 331, among other things, is a section providing for bond issues for building roads and bridges.

This section was not amended or attempted to be amended by chapter 150, Laws of 1910, and its subsequent amendments, including chapter 172, Laws of 1916, but the law of 1916 under which the board of

supervisors of Harrison county is operating is in express terms an additional method not intended to repeal or amend any other road scheme. Section 333 is a general section, broad and comprehensive in its scope, and applies to bond issues where the subject-matter is not otherwise regulated. Under its terms if after the notice is published ten per cent. of the taxpayers of the county shall petition against the issuance of the bonds, the bonds cannot be issued un-less authorized by a majority of the male taxpayers voting in an election ordered by the board for that purpose. Inasmuch as the scheme here involved is a road district scheme and distinguished from the county unit scheme, and inasmuch as the limitation on the amount of the bond issue is fixed in the act, we think it is what its language makes it, a separate scheme independent of other schemes, and was in-tended expressly to provide a different scheme from that afforded by section 331. By its language, in express terms, outstanding bonded indebtedness of the district is excluded from the five per cent. assessed value which the board is authorized to issue. The indebtedness of the districts involved in this suit was incurred under chapter 149 of the Laws of 1910, subse-quently amended and those bonds are not bonds issued under this chapter and the chapters which it amends.

It seems to have been the purpose of the legislature to confer absolute discretion on the board of super-visors to issue bonds under this scheme to the amount of five per cent. of the assessed valuation, and it does not seem to be the purpose of the legislature to give the people a veto power on the action of the board. There is no constitutional provision that we have found and none has been cited to us in the briefs by which a submission to the people is a necessary step in the issuance of bonds. The whole question is one of statutory construction, and it is not necessary for the legislature to place a requirement to submit

it to a vote in the act, and as the legislature has' not placed any restriction, the board has the discretion as to the terms of its contract in the issuance of bonds so authorized by the legislature. In answering an objection to another law presenting practically the same grounds in which it was argued that such notice was necessary, this court in the case of Prather v, Googe, 108 Miss. 687, 67 So. 159, speaking through Mr. Justice Cook, said:

"The first and second ground for relief will be considered together. It is not pointed out wherein the act is unconstitutional, unless the constitutional inhibition referred to may be found in the fourteenth ground for relief. In this ground it is said that the act is in violation of the due process clause of the Federal Constitution, 'in that no proper method is provided for ascertaining the will of the qualified voters, or property owners, in that nonresident property owners . . . are allowed no participation in the election or petition.' This, we think, has been answered. It was not necessary to the constitutionality of the act that either qualified electors or property owners, resident or nonresident, should be consulted. There is nothing in the act which discriminates between resident or nonresident property owners."

In *Rosenstock* v. *Washington County,* 72 So. 877, Mr. Justice Cook, in answering another objection about notice not being given, says:

"The objections made by appellee to the bond issue are: There was no notice given by publication in accordance with the terms of chapter 176 of the Laws of 1914. There is no merit in this objection, because chapter 174, Laws of 1916, which is an amendment to chapter 176, Laws of 1914, does not require any publication of the intention of the board of supervisors to issue bonds, when the petition presented shows that the. pro-

posed bond issue is in excess of five hundred thousand
dollars. When the bond issue is to be in excess of five
hundred thousand dollars, the board of supervisors is
by statute required to order an election to ascertain the
will of the qualified electors.''

However desirable it may be as a matter of policy to
give the voters the power to restrain and prevent bond
issues, it is at last only a question of policy, and not
one of constitutional power. In the absence of consti-
tutional restriction, the legislature has the power to
confer on the board practically unlimited power in the
bond issue. The extent of limitation in the absence of
restriction is pointed out in the case of *Monroe County*
v. *Strong*, 78 Miss. 565, 29 So. 530.

It is strenuously urged that this act ought to be de-
feated or annulled by the court for the reason that, if
it is an independent statutory road scheme, it does not
provide for the date of the maturity of the bonds or the
amount nor the contents to be expressed in the bonds,
and that there is inadequate machinery provided in the
act for the board to carry out an issue of the bonds be-
cause of the absence of prescribed statutory methods
and restrictions. We think that, when the legislature
gives the board the power to issue the bonds, as it has
done in this act, this is a grant of power to contract,
and that it is left to the discretion of the board of su-
pervisors as to the terms, conditions, and detail plans
for making its contract. The board has power under
numerous statutes to make contracts where the char-
acter of the contract and the terms and conditions of
the contract are not prescribed by law, but it is not for
this reason without power to make the contract or to
prescribe the form, terms, and conditions of its con-
tract. This is a matter of administration and detail for
the consideration of the board and the bond buyers.

It is urged here that this court in the case of *Sick* v.
*Bay St. Louis*, 74 So. 272, lays down a rule applicable
to this case. In that case the city of Bay St. Louis was

authorized to issue bonds in a given amount. Nothing was said about how and under what circumstances the bonds should be issued. But that case was governed by a law applicable in express terms to all municipalities which prescribed conditions that should govern municipalities in the issuance of bonds, and there was no constitutional provisions preventing the legislature from absolutely prescribing the conditions on the municipalities of the state. It is easily distinguishable from the present case because of the constitutional provisions referred to in the foregoing opinion. We have attentively considered the objections urged against the validity of the present law and bond issue, and have made investigations of our own, and we are unable to find any sufficient reason why the bonds should not be issued and sold in this case. The board of supervisors in their orders on the subject have fully dealt with the matter, and we see no legal or constitutional objection to their proceedings.

The chancellor having reached the same conclusion, the judgment is affirmed.

*Affirmed.*