Board of Supervisors of Lamar County *v.* Gulf & S. I. R. R. Co.

[79 South. 90, In Banc.]

1. Highways. *Tax. Limitation.*
   Taxes levied for road purposes under Laws 1916, chapter 172. (Hemingway's Code, section 7155), are not limited to three mills by Code 1906, section 4469 (Hemingway's Code, section 7143).

2. Highways. *Road taxes. Limitation.*
   Laws 1916, chapter 172 (Hemingway's Code, section 7155) is not unconstitutional because it imposes no limitation on the amount of taxes which may be levied thereunder for road purposes.

3. Judgment. *Non obstante veredicto.*
   A motion for a judgment *non obstante veredicto* will lie only where, after a pleading by defendant in confession and avoidance and issue joined thereunder, and verdict found for the defendant, the plaintiff, on retrospective examination of the record, conceives that such plea was bad in substance, and might have been made the subject of demurrer on that ground. If the plea

was itself substantially bad in law, the verdict, which merely shows it to be true in point of fact, cannot avail to entitle the defendant to judgment; while on the other hand, the plea, being in confession and avoidance, involves a confession of the plaintiff's declaration, and shows that he was entitled to maintain his action. In such case, therefore the court will give judgment for the plaintiff without regard to the verdict.

Appeal from the circuit court of Lamar county.
Hon. A. E. Weathersby, Judge.
Suit by the Gulf & Ship Island Railroad Company against the Board of Supervisors of Lamar County. From a judgment for plaintiff, defendant appeals.
The facts are fully stated in the opinion of the court.

*Salter & Hathorn,* for appellant.

The only question then to be determined by us is whether or not, in giving boards of supervisors the authority to levy *ad valorem* taxes, the legislature must put some limitation on the boards. In other words must the legislature fix the maximum amount that can be levied by the boards?

In *Ellis* v. *Donnell, Sheriff,* 72 So. 878, where chapter 177, Laws 1916 was being construed, the court held that these new road chapters are "additional methods of working public roads," distinct from, and independent of Code 1906.

In the case of *Lang* v. *Harrison County,* 111 Miss. 341, 75 So. 126, which was a construction of the identical chapter now under consideration, chapter 172, Laws 1916, the court said:

"If the act is to be regarded as an additional method, independent of other methods, as it seems to us it must be, then it follows that its own terms are to govern unless there is some general statute broad enough in its terms to make a contrary conclusion mandatory. In dealing with this question we must consider that the section 170 Constitution, provides for

a board of supervisors, and provides that the board shall have jurisdiction over roads, ferries and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and to perform such other duties as may be required by law. The only limitation in this section is that the board shall exercise its jurisdiction and powers in accordance with the regulation prescribed by the legslature, and where the legslature has prescribed no regulations, the board has full jurisdiction and power over the subject."

The first question then to be determined is, Is there any general statute broad enough in its terms to warrant the court in concluding that the *quantum* of the *ad valorem* tax was to be fixed in this chapter by the terms of the general statute?

A close examination of the statute books of the statute fails to disclose any such statute, there being no general statute at all covering the matter. Section 469, Code 1906, (Hemingway's Code, section 7143), is not a general statute because it is not even operative in any county, "except by order of the board of supervisors to that." Section 4475, Code 1906 (Hemingway's Code, section 7150).

There is no allegation in the declaration, nor does the record anywhere show that Lamar County through its board of supervisors ever was placed under the eleven sections of chapter 123 of the Code of 1906, but conceding, for the sake of argument, that it was, when the county elected to come under the provisions of chapter 172, Laws 1916, the Code chapter would no longer control.

Certain it is that if the court is correct in its holding in *Ellis* v. *Donnell, supra,* wherein it says that section 333, Code 1906, is not "sufficiently broad" in its terms to make it mandatory on the board of supervisors to publish its intention to issue bonds before it can issue any bonds, then section 4469 cannot be considered sufficiently broad to fix the *quantum* of taxes to be levied

under chapter 172, Laws 1916, as its application is confined to the particular plan of work provided in the last eleven sections of chapter 173, as is perfectly plain by a reading there as follows:

"In addition to the commutation tax, there shall be an *ad valorem* tax, not to exceed three mills on the dollar, in any one year, on all taxable property within such portion of the county as may be worked by contract, to be used as a general road fund within that portion of the county so worked."

It is interesting to note that the above levy can only be made on taxable property in that portion of the county worked by contract. According to the record in this case, no roads in the county are being worked by contract, and in fact and in truth under chapter 172, Laws 1916, the roads cannot be worked by contract, but must be worked by the board of supervisors or under its direction.

The same is true of section 4443 of Code 1906 (Hemingway's Code, 7123), which is the only other provision or section in the Code that deals with the levy of an *ad valorem* tax for the working of public roads.

Sections 4443 and 4469 of the Code are no more general in their nature or application than is section 2, chapter 174, Laws 1914, which fixes a maximum levy of ten mills on the dollar, and that section can with just as much reason, and with better excuse, be looked to for the maximum or *quantum* of *ad valorem* taxes to be collected, as the sections of the Code above referred to.

Then having determined the question that there is no statutory limitation or *quantum* fixed by the legislature in the levying of road taxes under chapter 172 by the board of supervisors, we come next to consider the question of the constitution.

Is there any constitutional requirement on the legislature to limit the board of supervisors as to the number of mills taxes it can levy? If there is, then

chapter 172, Laws 1916, as well as chapter 177, of the same law is unconstitutional. Not only are these chapters unconstitutional, but section 324, Code 1906 (Hemingway's Code, 3697), providing for the levy of a tax to build, remodel and repair courthouses, etc., and section 4572, Code 1906, as amended by chapter 251, Laws 1914, providing for the levying of a special tax for the extention of the public school terms are unconstitutional for the same reason.

We · have searched the constitutions of the state beginning with the Constitution of 1817, and ending with our present one, and we fail to find, anywhere, that the legislature must place this limitation on the boards of supervisors, and we earnestly insist that there is no such constitutional requirement.

A study of road legislation, and the constitutional provisions touching roads and bridges, etc., will prove interesting just here, and, we think, will throw light on the question to be determined in this litigation as well as to assist us to arrive at a correct interpretation of the intention of the legislature, in adopting chapters 172, and 177, Laws, 1916.

The constitution of 1869, section 20, article 6, provides that each county shall elect five persons, as supervisors "which body shall have full jurisdiction over roads, ferries and bridges" and by section 16, article 11, "no county shall be denied the right to raise by special tax money sufficient to pay for bridges and other necessary conveniences for the people.

While this constitution was in force, this court in *Board* v. *Kline,* 51 Miss. 807, and *Gamble* v. *Witty,* 55 Miss. 26, held that the legislature was without constitutional authority to limit the boards of supervisors in their power to tax at all, as to the purpose enumerated in article 12, section 16. These two cases were overruled in *Beck* v. *Allen,* 58 Miss. 143, but by a divided court, the late judge J. A. P. Campbell, vigorously dissenting.

The makers of the Constitution of 1890, evidently recognizing the doubt, at least, as to this legislative power struck section 16, article 12, from the constitution, and no such provision appears in our present organic law, thereby granting the legislature the power or authority to limit boards of supervisors in their powers of taxation, but certainly not making it mandatory on the legislature to do so.

Section 170, Constitution of 1890, also limits the jurisdiction of the boards of supervisors over roads, bridges and ferries by adding to the language of the Constitution of 1869, to be exercised in accordance with such regulations as the legislature may prescribe. Again increasing the power of the authority of the legislature along these lines, but not making it mandatory on it to limit the boards as to the *quantum* of *ad valorem* taxes levied.

A great many other safeguards were added to the Constitution of 1890, that did not appear in the earlier constitutions, among which are section 80 to prevent by general laws, the abuse of cities, towns and other municipal corporations, of their powers of assessment, taxation, etc., borrowing money, and contracting debts. We note right here that this injunction is not applicable to counties and county governments.

Section 85, requiring the legislature to provide by general laws for the working of public roads by contracts, or by county prisoners or both but we note that no injunction or requirement is placed on the legislature here to limit the boards of supervisors in the levy of *ad valorem* taxes to carry out these provisions of the constitution.

Section 95 preventing the donation of public lands to corporations or individuals. Section 109, preventing any officer being interested directly or indirectly, in any contract with the state, county, or city, etc.,

Section 125, giving the governor power to suspend defaulting offi'cers. Section 137, requiring the state treasurer to make quarterly reports of cash balances, etc., Section 175 providing for the removal of officers upon conviction for neglect of duty or misdemeanor in office. Section 176, requiring members of the board of supervisors to be resident freeholders, and requiring the legislature to fix the value of the real estate to be held by each member. Section 182, denying to the legislature the right to surrender or abridge its power to tax corporations. Section 183, denying to counties, municipalities, etc., the power to subscribe to the capital stock of railroads or aid or lend its credit or support to such corporations. Section 186, requiring legislatures to pass laws preventing abuses and extortion and unjust discrimination by express and railroad companies, etc. Section 188 preventing the granting of free passes by railroads to county officers. Article X, correcting the many existing evils in the convict system of the state and counties.

The above and a great many other injunctions, prohibitions and provisions are found that are not in the Constitution of 1896, showing clearly and conclusively that the framers of the constitution were trying to meet and provide for all existing evils, and to prevent all abuses then existing, in the legislative and other governing bodies. However, a thorough search of the constitution fails to disclose, even by inference, that it tends to prohibit the legislature the authority to delegate to boards of supervisors unlimited power of levying taxes.

The fact that it did enjoin and prohibit the legislature in so many things, shows conclusively, to our minds, that they never intended to prohibit this authority to the legislature.

In *Lang* v. *Board of Supervisors, supra,* this court said: "However desirable it may be as a matter of policy to give the voters the power to restrain and prevent bond issues, it is at least only a question of policy, and not one of constitutional power. In the absence of constitutional restriction, the legislature has the power to confer on the board practically unlimited power in the bond issue."

If that is true of bond issues, where generations unborn are being taxed, it would certainly be true in the case at bar, where taxes are being levied year by year to meet the annual requirements of the road districts, for this year the road district might need eight mills and next year one mill; no one can know the actual annual needs of the district or county better than the board of supervisors.

It then appears clearly manifest, that the constitution does not restrict the legislature, nor does it require the legislature to restrict the board of supervisors.

The legislature is clothed, under our constitution with unlimited powers of taxation. If this is true, and it cannot be successfully denied or contradicted, and if the constitution does not prohibit or restrict the legislature in the delegation of this taxing power, and the legislature sees fit to delegate it, it is certainly not for the court to restrict or curtail it.

The power of the legislature to delegate its constitutional authority to tax will not be denied. Then if it can delegate its power to tax up to three mills or to ten mills what is to prevent it from delegating its power up to one hundred mills, or to the full extent of its own power to levy.

There is no better settled principle, and no more reasonable one, than that a body clothed with the power to delegate its authority, can delegate all its authority if it can delegate any part of it unless it should be prohibited, specifically, from a delegation of all its authority or power.

It would certainly be begging the question to say that the legislature could, under its constitutional authority empower the boards of supervisors to levy a tax of ten, twenty, fifty, or one hundred mills on the dollar, by fixing a limitation in the act, and then to say, that because no limitation was fixed the board could not make a levy of five mills. The legislature has thoroughly safeguarded against the board of supervisors misappropriating funds, as may be seen by reference to the various statutes on this subject.

A study now of the various acts of the legislature, with regard to the working of the public roads, and the levying of taxes with which to work same, will, we trust, show whether or not the legislature really intended to limit the *quantum* of *ad valorem* tax to be levied under chapter 172, Laws 1916, to one mill or three mills as limited in chapter 123, Code 1906.

The first road working legislation that we have been able to find is sections 3929 to 3935, inclusive, Code 1892. All these sections are brought forward in the Code of 1906, and are still the law, and provide for the working of roads by contract, the levying of not exceeding one mill *ad valorem* tax, working convicts on the public roads and the purchase of the necessary tools and implements.

This sufficed until 1900 when the legislature adopted a broader and more comprehensive scheme for working the roads by contract, under chapter 119, Laws 1900, but the *ad valorem* tax was still limited to one mill on the dollar, and providing that the act should not apply to any county except by order of the board of supervisors spread upon its minutes.

Chapter 119, Laws 1900, was brought forward into the Code of 1906, practically unchanged except the limit placed on the board of supervisors in the levy of an *ad valorem* tax was raised from one to three mills. Chapter 140, Laws 1904, was the first provision ever made by the legislature for the issuance of bonds

for the working of public roads and this provision is still in our statute law.

These laws remained the only expression of the legislative mind in so far as the method of working public roads and the raising of revenue therefor was concerned, until the adoption of chapter 150, Laws 1910, and from which chapters 172 and 177, Laws 1916, are outgrowths.

Since this time a great number of additional methods have been adopted by this and succeeding legislatures for the working of public roads, and for the raising of revenue therefor, amongst which is an acreage tax, and special assessment of taxes against abutting landowners, bonds, *ad valorem* taxes and commutation taxes. In adopting chapter 150, Laws of 1910, the legislature did not see fit to limit the authority of the boards of supervisors in the levy of an *ad valorem* tax.

Was it the purpose or intention of the legislative body in 1910, to remove all restrictions from the boards of supervisors, in the levy of an *ad valorem* tax under this chapter 150, except those fixed by general statutes "broad enough in their terms to make a contract conclusion mandatory" and leave the *quantum* of taxes to be levied in the discretion of the board of supervisors to meet the many different conditions and requirements in the seventy-eight different counties in the state and the more than three hundred supervisors' districts therein.

Clearly it was Chapter 97, Laws 1906, provides that boards of supervisors may levy taxes for all purposes, which, added to the state tax, will make sixteen mills, and no more, provided that counties may levy an additional tax of not exceeding two mills to provide funds to maintain public schools. Chapter 72, Laws 1908, has the same provisions and limitations.

Chapter 98, Laws 1910, provides: "That boards of supervisors may, levy taxes for all purposes (exclusive of road tax, and county common school and agricul-

tural high school tax), which added to the state tax will make sixteen mills on the dollar.''

The above act was approved April 13, 1910, while chapter 150, Laws 1910, was approved April 8, 1910, thus clearly showing that the legislature acted advisedly and intentionally in removing all limitations from the board of supervisors. But for the adding of road taxes to the exclusions of the general sixteen mill limitation, the board could of course, have levied only such tax as, added to the common county, levies would have aggregated ten mills on the dollar, the state tax levy being fixed at six mills.

At the same time the legislature removed all limitation and all restraint, in so far as the board of supervisors is concerned, in the levying of school taxes under section 4572, Code 1906. Appellees say that under the provisions of section 4572, the amount of taxes to be levied is fixed by petition and election of the qualified electors of the county. Conceding that this is true, for the sake of argument, the electorate has no inherent right to tax the public, and if the legislature can and does delegate to the qualified electors of the county the authority to place on the public or levy, if you please, an *ad valorem* tax for school purposes unlimited as to *quantum*, certainly it could delegate the same authority to the board of supervisors, and it would make no difference whether the levy was for school purposes or road purposes.

Laws 1912, chapter 87, and Laws 1914, chapter 108, contain the same limitations and exclusions as Laws 1916, chapter 85, also contains the same exclusions and limitations except court houses are added to the exclusions. Under appellee's contention then, because there is no limitation in the number of mills that can be levied under section 324, Code 1906, and court house tax is excluded from the sixteen mill limitation, section 342 becomes thereby unconstitutional.

Chapter 150, Laws 1910, has been amended by successive legislatures four times; first, by chapter 258, Laws 1912; then by chapter 172, Laws 1916, and in none of these amendments has the legislature seen fit to place a limitation on the authority of the boards of supervisors to levy this *ad valorem* tax, and while each amendment has been for the purpose of supplying some defect in the previous law, still the authority of the boards of supervisors to levy unlimited taxes remains, and each succeeding legislature has, in addition to this consistently excluded road tax from the sixteen mill limitation.

Certainly if the failure of the legislature to limit boards of supervisors had been an oversight on their part, or any abuse of it had been brought to their attention, it would have been corrected in some of these many amendments or in some of these successive limiting statutes. It is interesting just here to note that the decision of *Martin* v. *Little, supra,* had been rendered prior to the convening of the 1918 session of the legislature, in which the court said that the board of supervisors under these acts were clothed with unlimited powers of taxation, up to at least five per cent. and yet in the face of this holding of the supreme court, road taxes, is still excluded from the sixteen mills limitation, and the boards still have unlimited authority to levy under these two chapters.

*B. E. Eaton* and *Tally & Mayson,* for appellee.

In 1916, the appellant passed an order adopting chapter 172, Laws of 1916, for working public roads in the county. The statute provides that funds for the working of the roads and building bridges may be raised by a bond issue of five per cent. by a commutation tax of three dollars on persons subject to road duty, by an *ad valorem* tax on the assessed valuation of property, by acreage tax or by any or all of the meth-

ods. It will be observed that the legislature was absolutely silent as to the amount of acreage or *ad valorem* tax that the board could levy under the act. Unless then the board is vested with the power of limitless taxation, the amount which the board could lawfully levy must be found in other statutes. If the statutes in question is constitutional, and we contend that it is not, others must be looked to to determine the amount of taxation which the board could lawfully levy. If it is constitutional, the only laws extant at the time that the act under consideration became a law was the last eleven sections of the Code chapter on roads, ferries and bridges. Under these only a maximum sum of three mills could be levied. Code 1906, section 4469, Hemingway's Code, section 7143.

In construing chapter 150, Acts of 1910, which is the prototype of chapter 172, Laws of 1916, this court held that chapter 150, Acts of 1910, did not provide for a full and complete scheme of raising money for working the roads and that section 4469, Code of 1906, was to be considered a part thereof for such purposes. *City of Holly Springs* v. *Marshall County,* 104 Miss., 61 So. 703.

Counsel insists that there is practically no difference between chapters 172 and 177, Laws of 1916. An examination of the same will show that much larger powers are conferred under chapter 177, than are conferred under chapter 172. Paragraph 1 of chapter 172 provides: "That the board may employ labor and work public roads. Paragraph 2 provides: "That the board may raise funds for working public roads and building bridges."

Page 2, of chapter 177 provides: "That the board may raise funds for working and constructing public roads and building bridges. So that under chapter 172 the board is limited to raising revenue for the purpose of working the roads already in existence, while chapter 177 confers upon the board the power not

only for working those in existence, but the power to construct roads which may mean, as we take it, the power of grading and ballasting roads already in existence and the power of constructing roads where none existed before. Necessarily under chapter 172 as much revenue would be required as would be under chapter 177. This contention is also supported by the fact that under 177, it is mandatory upon the board to employ a competent engineer, or commissioner, as he is styled in other parts of the act, to superintend or have charge of the work on the roads. This commissioner is also required to execute a bond for the faithful performance of his official duties. None of these restrictions appear in chapter 172. It is left optional with the board under chapter 172 if it sees proper, but no part of the act requires a commissioner to execute a bond or give the public any other security from his negligence or incompetency, but would make the bonds of the members of the board stand as security for their own negligence or the negligence of their employees. Much greater powers were conferred by chapter 177, than were conferred by chapter 172, Laws of 1916, so that any construction put upon the one would not necessarily be controlling on the other.

We disagree with counsel in their statement that the case of *Martin* v. *Little,* 115 Miss. 195, 75 So. 142, sets at rest the power of the board to levy taxes *ad libitum* under chapter 172, Laws of 1916, for road purposes. In that case the court amongst other things says: "Chapter 85 of the Laws of 1916, is the general law on the limitation of the power of the board of supervisors to levy tax and from this limitation. Roads, court houses, county common schools, and agricultural high schools are excepted. There is, therefore, no limitations in this chapter on the power of the board of supervisors to levy taxes and a careful search of

the constitution fails to disclose any section in the constitution which imposes a limit on the power of the county to tax at all. The legislature has granted the power to tax to the board of supervisors in chapter 177, without restriction at least under five per cent, and the levy involved here does not approximate this limit."

With all due deference to the court and to the learned Judge, who delivered the opinion in that case, we think the declaration is erroneous, that there was no limit put upon the taxes for roads, courthouses, common county schools and agricultural schools. While it is true, chapter 85, Acts of 1916, the amount of taxes that might be lawfully levied for such purposes is not mentioned, still the limits can be found by resort to other statutes. For agricultural high schools, two mills is the maximum limit allowed. Acts of 1910, chapter 122; Acts of 1916, chapter 196. The levy allowed by laws for courthouses is to be found in other statutes.

"The board of supervisors of any county may levy special tax for the erection, etc., for the courthouse, jail, and other buildings." Code of 1906, section 325, Hemingway's Code, section 3697.

"For the purpose of providing the county with a courthouse and jail, county home, repairing courthouse and jails, and for building bridges, constructing public roads, and refunding any outstanding bonded indebtedness of the county, the board may issue bonds for an amount which, added to all other bonded indebtedness, will not exceed five per cent of the taxable property." Code of 1906, section 391, Hemingway's Code, page 3704, as amended by chapter 184, Laws of 1910, and chapter 234, Laws of 1912.

The funds for the common schools of the county are derived primarily from the state's distribution. If it be desired to supplement the term or salaries of

the teachers, the board of supervisors of the county are authorized to levy a tax of not exceeding three mills on a dollar for such purpose. Code of 1906, section 4534. See section 7352, et seq., Hemingway's Code.

It appears then, that while common schools, courthouses, agricultural high schools, and roads were excepted from chapter 85, Laws of 1916, that the authority to raise revenue for such purposes by taxation has already been provided for in other statutes. No law though, at that time, provided for raising the state's revenue or the revenue for general county purposes, so that it was necessary to enact chapter 85, Laws of 1916. If the statute confers the power of unlimited taxation upon the board or the power to levy a tax in excess of three mills, as counsel strenuously insist, then the law is unconstitutional.

"The power to impose taxes is exclusively in the legislative department of the government, and cannot be exercised by any other department of the government except in pursuance of its authority." 37 Cyc. 324.

"It is not competent for the legislature to delegate its power of taxation, wholly or in part to either of the other departments of the government or to an individual, private corporation, officer or board of commission. 37 Cyc. 725.

We do not contend that a discretion would not be vested in the board to levy a tax within certain limitations. To illustrate, a statute would be valid which vested the board with authority to levy a tax of not less nor more than a given amount, but a statute would be invalid which vested a discretion in the board to levy a tax without limitation as to the amount.

We respectfully submit that the statute is unconstitutional for another reason in that it is violative of page 109 of the constitution. Following the wake of the civil war we are told that the aliens whose mal-

administration of the affairs brought innumerable woes upon the taxpayers were directly responsible for the enactment of section 1392, Code of 1871, introduced in the house as the journal shows, by the late Major Sessions.

That section is as follows: "That hereafter it shall be unlawful for any member of any board of supervisors in this state, to have, or own, any share, either directly or indirectly, through any member of his family or other person, in any contract, hereafter to be made or let by any such board of supervisors, for the construction of courthouses, jails, bridges, schoolhouses, or other public buildings or works, or for any member of such board to receive any portion or share, either directly or indirectly, of the money or other things paid for the construction of such buildings, bridges, or other public works.

Practically a rescript of the act of 1871 is to be found in section 2181, Code of 1880, section 343, Code of 1892, section 365, Code of 1906, So impressed were the members of the constitutional convention of 1890 with the justice and the wisdom of that act that it found crystallization in section 109 of the constitution which was doubtless put in the organic law for the reason that it was thought that if any subsequent legislature desired to strike down that barrier, protecting the people from the cupidity or avarice of their accredited agents, it could not be done without a change in the constitution itself.

An examination of the law under discussion, chapter 172, Laws of 1916, shows conclusively that it is an attempt to remove the limits on the prohibition that a member of the board or the entire board cannot be interested directly or indirectly in any public contract awarded by them. In making contracts for supplies, material and labor the board must necessarily contract with itself and could open the door to all

kinds of favoritism, if it so desired. The statute undertakes to confer upon the board the power to do indirectly what the constitution expressly prohibits it from doing. The law does not even require a commissioner to be appointed to purchase supplies, employ and work labor. While it is true that the constitution confers upon the board of supervisors full jurisdiction over roads, etc., it is also true that, that jurisdiction must be exercised strictly in conformity to the laws and constitution. The contention advanced that the statute in question is violative of section 109 of the constitution is supported by the case of *State* v. *Levy Commissioners,* 96 Miss. 677, 51 So. 211.

It is said in the case of *Monroe County* v. *Strong,* 78 Miss. 565, where the various statutes and constitutional provisions relative to the power of the board of supervisors to levy taxes, etc., are reviewed, that:

"This and other provisions of the Constitution of 1890, as well as the statutes subsequently enacted, manifest a purpose to more closely limit and fetter boards of supervisors, and also municipal authorities, in the matter of taxation. Whatever degree of trust and confidence may formerly have been reposed in these local boards, such spirit is not observable in persent constitutional and statutory provisions.

It may be that the experience of tax-payers in this state during an era historic for its shame, extravagance and robbery, under the guise of taxation has not been without its lesson to our people. However this may be, the Constitution of 1890, introduced several new safeguards, for the taxpayers. Section 80 enjoines upon the legislature to make provision by general laws to prevent the abuse by cities, towns and other municipal corporations of their powers of assessment, taxation, borrowing money and contracting debts. Section 183, makes ownership of real estate a qualification for the

office of supervisors, the evident purpose being to exact a guaranty that every incumbent of this extremely important office shall be indentified in interest with the taxpayers of his county.

We respectfully submit that the statute in question is unconstitutional for another reason. Each municipality shall constitute a separate road district. ' Code of 1906, section 3330. There are three large towns in Lamar county, separate municipal corporations. These towns work their streets and are separate road districts. While the statute authorizes the collection of a tax, it does not provide that any part of it shall be paid to the municipal authorities. It would then work a great hardship upon property and property-owners in a municipality. Under the statute they would be liable to double taxation, as the inhabitants would, not only be compelled to keep up the streets in a municipality to be taxed, for that purpose, but would also have to pay the five mills that was levied for general road purpose. The statute then violates section 112 of the constitution, providing that taxation shall be equal and uniform throughout the state. We think then that it inevitably follows that if it be conceded that the act is unconstitutional that the maximum limit of levy would be three mills to be equally divided between the county and the municipality with reference to those funds that are paid in on property in municipalities as provided by section 4469, Code of 1906, but we insist that it is unconstitutional on three theories: First, that it undertakes to delegate the power of the legislature to levy taxes; Second, that it is violative of section 109, of the constitution; Third, that it is violative of section 112 of the constitution. From these considerations it is respectfully submitted that the case ought to be affirmed.

Smith, C. J., delivered the opinion of the court.

The board of supervisors of Lamar county, acting under chapter 172, Laws of 1916 (section 7155, Hemingway's Code), levied a tax of five mills for road purposes. Appellee paid the amount demanded by the tax collector from it under this levy, but, claiming that the levy was two mills in excess of the amount which appellant was authorized to levy, instituted this suit in a court of a justice of the peace to recover this alleged excess. When the case reached the court below by appeal from the court of the justice of the peace, appellant filed a written demurrer to appellee's statement of its cause of action, which demurrer was overruled. Thereupon appellant filed a written plea of the general issue upon which the cause proceeded to trial resulting in a verdict and judgment for appellant. Appellee then filed a motion, praying that this judgment be set aside and that judgment be rendered for it, *non obstante veredicto,* which motion was sustained, the judgment first rendered set aside, and a judgment rendered in appellee's favor for the amount sued for.

Appellee's contentions are: First, that although chapter 172, Laws of 1916 (section 7155, Hemingway's Code), under which the tax here in question was levied, imposes no limitation upon the amount thereof which may be levied by boards of supervisors, such boards are limited by section 4469, Code of 1906 (section 7143, Hemingway's Code), to a levy of three mills for road purposes, which limitation applies to the taxes levied under the statute here in question; second, if this is not true, then chapter 172, Laws of 1916 (section 7155, Hemingway's Code), is unconstitutional. Both of these contentions are ruled against appellee by *Ellis* v. *Donnell,* 112 Miss. 129, 72 So. 878, *Lang* v. *Board of Supervisors,* 114 Miss. 341, 75 So. 126, and *Martin* v. *Little,* 115 Miss. 195, 76 So. 142.

The case of *City of Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703, supports appellee's contention, but that case, though not referred to therein, was necessarily overruled by the three cases hereinbefore cited.

There is another reason why appellee's motion should have been overruled, and that it that:

A motion for a judgment *non obstante veredicto* will lie only "where, after a pleading by defendant in confession and avoidance, . . . and issue joined thereon, and verdict found for the defendant, the plaintiff, on retrospective examination of the record, conceives that such plea was bad in substance, and might have been made the subject of demurrer on that ground. If the plea was itself substantially bad in law, of course the verdict, which merely shows it to be true in point of fact, cannot avail to entitle the defendant to judgment; while, on the other hand, the plea, being in confession and avoidance, involves a confession of the plaintiff's declaration, and shows that he was entitled to maintain his action. In such case, therefore, the court will give judgment for the plaintiff without regard to the verdict." Heard's Stephen on Pleading, page 97.

The judgment of the court below will be reversed, and the original judgment rendered in favor of appelant will be reinstated.

*Reversed and judgment here.*