Thomas et al. *v.* Board of Supervisors of Harrison
County et al.

[79 South. 177, Division B.]

1. HIGHWAYS. *Work on public roads. Contracts. Statute.*

Laws 1916, chapter 172, section 1, provides that the board of
supervisors is authorized to purchase teams, implements and
material, and employ labor and work the public roads; that
the contract for materials and supplies was to be made on and
after competitive bids for the same. That the board is au-
thorized to employ a road commissioner, and that the labor for
the roads shall be employed by the board of supervisors or in
case there shall be a commissioner by him. A contract under
this statute which did not comply with its provision was void.

2. HIGHWAYS. *Work on roads. Revetments.*

Contracts by the board of supervisors could not properly be let
to build revetments on private property adjacent to a public
road, where no right had been obtained from the owner of the
land to build the same and no steps taken to condemn the
property.

3. HIGHWAYS. *Revetments. Plans and specifications.*

Where there are links upon a public road which are subject to
the ravages of storm and against which ravages the board of
supervisors may erect revetments or breakwaters, such links
would have to be described in the plans and specifications with
reasonable certainty. The kind and character of work done
would have to be described, so that all bidders would have the
right to compete for the work, and the contract should describe
the work, and what must be done to comply with the contract,
and this contract could not be varied by leaving it to the judg-
ment of an engineer or other individual, nor to the whole board,
but if changed at all, could only be done after notice describ-
ing the change and inviting bids to compete for the work.

4. HIGHWAYS. *Revetments.*

Boards of supervisors cannot build breakwaters for highways un-
less it is reasonably certain that in the near as distinguished
from the remote future the sea will encroach upon and dam-
age the highway. The board of supervisors cannot under the
pretense of building or repairing a road, build a sea wall.

APPEAL from the chancery court of Harrison county. HON. W. M. DENNY, JR. Chancellor.

Bill by James Thomas and others against the Board of Supervisors of Harrison County and others. From a decree on demurrer dismissing the bill, the complainant appeals.

Thomas and other complainants filed a lengthy bill in the chancery court of Harrison county, Miss., against the board of supervisors, Callahan Construction Company, and Spitzer & Co., alleging that the board of supervisors of Harrison county adopted chapter 172 of the Laws of 1916 for the working of public roads and proceeded to issue bonds under said chapter without giving notice to the taxpayers of their intention to issue the bonds, and without giving the taxpayers an opportunity to protest against the issuance of said bonds, or to have an election upon said bond issue, and alleging that said bonds were issued and sold to Spitzer & Co., and that a contract was entered into between the board of supervisors and the Callahan Construction Company, a corporation under the laws of Nebraska, by which the board undertook to divert the road funds derived from the sale of the bond issue to the construction of a sea protection project by which the construction company was to construct a sloping beach between the public road to the seashore, filling in the shore so as to have a sloping beach which was to be constructed by means of dredging sand from the Mississippi Sound to be taken at a distance of from two hundred yards to six hundred yards from the water's edge at low tide, and were to put either a creosoted timber piling along the water's edge, or a concrete wall, and to pump the sand by means of a dredge from the Sound to the lands between the public road and water at low tide in such manner as there shall be a six per cent. grade from the water's edge to the line of the Mississippi & Gulf Coast Traction

Company, which, it is alleged, lies between the public road and the seashore.

It is further alleged that the board of supervisors had entered into a contract with the Mississippi & Gulf Coast Traction Company by which the board of supervisors was to pay for the refilling of dirt to be taken from the lands between the traction company's lines and the shore so that the traction company's track would be raised to grade on a level with the public road; that said work of refilling places from which dirt was excavated by the traction company was to be paid for at the rate of twenty-four cents per cubic yard, when in fact it was not worth more than ten or twelve cents per cubic yard. It is further alleged that this contract between Callahan Construction Company and the board of supervisors was let without publication of notice to bidders as required by law, and that the contract price agreed to be paid was largely in excess of the real value of such work. It is alleged that the road which is claimed to be protected by this contract is from fifty yards to three hundred yards from the seashore, and that but a small part of said road is ever subject to overflow or washout by means of any storms in the history of the country, and that the greater part of said road is above the highest known high water in the history of the country, and is in need of no protection from the ravages of storms.

It is further alleged that the board of supervisors formerly undertook to act under the provisions of chapter 128, Laws of 1916, to issue five hundred and fifty thousand dollars worth of seawall bonds for the purpose of constructing a seawall along the Mississippi Sound along the same territory involved in the contract in this case, and had let the contract under the said seawall chapter above mentioned to the Callahan Construction Company, and that a suit was filed to test the legality of such bond issue and the constitutionality of the law constituting said chapter,

and said cause appeared in the supreme court of the state on said contest, and said act was declared unconstitutional, and that after the said law was declared unconstitutional and void the board of supervisors abandoned the project of issuing five hundred and fifty thousand dollars of said bonds to Spitzer & Co., for building a sea wall, and otherwise beautifying the beach or shore along said front; that after this decision of the supreme court Callahan Construction Company appeared upon the scene and presented to the board of supervisors of Harrison county a plan to construct what is known as a sloping beach; that the board of supervisors appointed civil engineers and had plans and specifications for a sloping beach prepared for that part of Harrison county extending along the shore of Mississippi Sound from the west corporate limits of the city of Biloxi to the east corporate limits of the city of Gulfport, and from the west corporate limits of Gulfport to the east corporate limits of Pass Christian, aggregating sixty thousand lineal feet; that the Callahan Construction Company made a bid for the construction of said sloping beach which was accepted by the board of supervisors; and that a contract was entered into to construct said sloping beach and maintain same for five years, said contract being made Exhibit 4 to the bill of complaint.

It is alleged further that this work was let by contract, and was a departure from the provisions of chapter 172, Laws of 1916, the provisions of which chapter, it is alleged, only contemplate the employment of labor by a board of supervisors or a road commissioner, and that said material shall be purchased by the board of supervisors after competitive bidding, and that there was no competitive bidding for any of the materials, and that the board did not undertake to buy materials according to the provi-

sions of said chapter, but made a contract with Callahan Construction Company by which all of the materials and labor would be furnished by Callahan Construction Company, and not by the board of supervisors, all of which it is alleged was unauthorized by the provisions of said act under which they were attempting to proceed. It is further alleged that there is no authority in law for said work to be done by the board of supervisors at all; that the only law under which the said work could be done at all was what is known as the "Genin Sea Wall Law;" that that law does not authorize the board of supervisors to do the work or let the contract; and that the plans of said law were not followed in any respect. It is alleged that the proceeding and contract between the board of supervisors and the Callahan Construction Company was a fraud and pretense, and that the purpose was not to improve the public road at all, but was to build a sea wall or sloping beach and to beautify the seashore. It is further alleged that chapter 172 of the Laws of 1916 is unconstitutional and void for numerous reasons.

There was a demurrer to the bill of complaint, which demurrer was sustained by the chancery court, and the bill dismissed.

*T. M. Evans,* for appellants.

*J. L. Taylor* and *R. C. Cowan,* for appellees.

Etheridge, J., delivered the opinion of the court.

(After stating the facts as above). In the case of *Lang* v. *Board of Supervisors of Harrison County,* 114 Miss. 341, 75 So. 126, we had before us a contest over the validity of this bond issue involved in this litigation. It is insisted that the Lang suit was not a *bona-fide* contest, but that the contest was so

shaped and conducted that both parties to that suit desired the court to decide the bond issue legal and the statute constitutional, and that decision was hurriedly gotten up to anticipate the decision in this case, which was then pending. The pleadings in the Lang suit presented the contest fairly and fully so far as the legality of the bond issue and the constitutionality of the statute is concerned. The questions were ably and elaborately argued, not only by counsel proper in that case, but by counsel in the present case as *amicus curiae,* and we think every constitutional objection which could be entertained by the opponents of the bond issue and the law was presented, especially by counsel appearing as *amicus curiae,* whose argument was elaborate and exhaustive. We are thoroughly satisfied with the soundness of the opinion there rendered, and it is adhered to in all respects.

The demurrer to the bill in the present case, however, should have been overruled, because under the allegations of the present bill the validity of the contract involved here was called in question which was not presented in the other case, and if the allegations of the bill in this case are true, a contract would be without authority and void.

Section 1, chapter 172, Laws of 1916, reads as follows:

"That the board of supervisors, in addition to the present methods of working the public roads of any county or beat thereof, may purchase teams, implements and material, and employ labor and work the public roads, and may do any and all things necessary to be done to work the roads, as herein provided, but all contracts for material and supplies shall be made on and after competitive bids for same. The board of supervisors are hereby authorized, in their discretion, if they consider it necessary and to the

general interest of the county, to employ a competent person to serve as road commissioner, whose compensation shall not exceed five dollars per day for each day served in the actual discharge of his duties, as defined by the board of supervisors of each county. Labor for said roads to be employed by the board of supervisors; in case there be a commissioner, to be employed by him.''

It will be seen from this section that the board is authorized to purchase teams, implements, and material, and employ labor and work the public road; that the contract for materials and supplies was to be made on and after competitive bids for the same; that the board is authorized to employ a road commissioner at not to exceed five dollars per day; and that the labor for the roads shall be employed by the board of supervisors, or, in case there shall be a commissioner, by him. The contract and exhibits to the bill setting out the notice, specification, and the bid, and the acceptance of the bid, were not in accordance with these provisions. There was no offer here by the board of supervisors to appoint a road commissioner to work and to employ labor to do the work, nor was there any notice to bidders, nor any bid for the material to be used on the road. The plan adopted for this work is entirely a different plan from that contemplated by section 1 of this chapter. Furthermore, the work undertaken is not work upon the highway itself, nor is it a protection or revetment work to be constructed upon the right of way of the road, but is to extend from the road out into Mississippi Sound, and to be constructed upon and over the property of private citizens over whose lands the right to do this work had not been obtained at the time of the letting of the contract, and of course the work could not be done at all until this property had been acquired, or the consent of the

owners of the property procured; and, if condemned, due compensation first made. Again, the particular links of the road to be safeguarded are not stated in the specifications, or the bid, nor in the contract between the county and the construction company.

If we concede that there are links upon this road which are subject to the ravages of storms and against which ravages the board may erect revetments or breakwaters, or other means of protection, such links would have to be described in the plans and specifications with reasonable certainty, the kind and character of work done would have to be described, so that all bidders would have the right to compete for the work, and the contract should describe the work, and what must be done to comply with the contract, and this contract could not be varied by leaving it to the judgment of an engineer or other individual, nor to the whole board, but, if changed at all, could only be done after notice describing the change and inviting bids to compete for the work.

Under the allegations of the bill in this case, which are admitted by the demurrer, a large part of the work contracted for is unnecessary for the protection of the road at all; at some points there is a distance of some three hundred yards between high water and the public highway, and no storms have ever damaged the road on such places.

The argument that the board may anticipate the encroachment of the sea in the future is far-fetched. If the allegations of the bill are true, the solicitude of the board as to the safety of the road on some of the parts thereof embodied in the terms of the contract is somewhat analogous to the character described by one of the Cape Cod poets under the title, "He Worried About It." One verse ran something like this:

"The sunlight will give out in ten million years more,
    And he worries about it;
  In about that time or a few days more,
    And he worries about it;
But his wife took in washing at fifty cents a day,
And his daughter worked in a store, the groceryman
      to pay,
    But he never worries about it."

It is evident that, if the allegations of the bill are true, the contract between the board of supervisors and the Callahan Construction Company is void and unauthorized. If a contract of this kind could be sustained at all, it would have to be limited to those links of road where the ravages of the storm have occurred, or where the circumstances show that they will occur with reasonable certainty in the near, as distinguished from the remote, future. The board of supervisors cannot, under the pretense of building' or repairing a road, build a sea wall.

*Reversed and remanded.*